# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00495-CR

**Anthony Barnes, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
### NO.0991880, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING

This appeal is taken from a conviction for aggravated robbery. *See* Tex. Pen. Code Ann. § 29.03(a)(2) (West 1994). After the jury found appellant Anthony Barnes guilty, the trial court[1] accepted appellant's plea of "true" to the two enhancement paragraphs of the indictment,[2] and assessed appellant's punishment at eighteen years' imprisonment.

### Points of Error

Appellant advances four points of error. In the first two points, appellant challenges the legal and factual sufficiency of the evidence to sustain the conviction, noting the application of the law of parties. Appellant further blends into these points of error the claim that the evidence is

---

[1] The trial judge at the penalty stage of the trial was Judge Charles Campbell.

[2] The prior convictions alleged for enhancement of punishment were for aggravated possession of cocaine and possession of cocaine. Both convictions occurred on the same date and in the same court.

insufficient to corroborate the testimony of the accomplice witness, which we will treat separately but as a part of our sufficiency discussion.

In the third point of error, appellant contends that the trial court erred in including in the judgment an affirmative finding of the use of a deadly weapon when the jury, as trier of fact, made no such affirmative finding. In the fourth point of error, appellant urges that the trial court erred in failing to submit a jury instruction requiring the jury to determine, if appellant acted as a party, that appellant knew that a deadly weapon would be used or exhibited in the commission of the offense charged. After modification of the judgment to delete the affirmative finding of the use of a deadly weapon, we will affirm the conviction.

**Facts**

In view of the challenges to the sufficiency of the evidence, the facts become vitally important. In April 1999, Elvira Combs was employed at the International House of Pancakes (IHOP) restaurant at 1101 S. MoPac Expressway in Austin. On a Thursday, Friday, Saturday, and Sunday, she was involved, *inter alia*, in training appellant to be a "manager on duty" at IHOP. She recalled that during this training period, appellant jumped ahead of the training schedule, asking where the receipts each day were deposited, how many employees were involved in making the daily deposit, the location of the bank, and mode of transportation used. Combs thought it was unusual because appellant repeatedly asked these questions.

On Monday, April 5, 1999, Combs was the only manager on duty. Appellant was not scheduled to work, but he called three times asking how busy the restaurant was that day, how much

2

money had been made, and whether Combs was the only manager on duty. Combs thought the number of times appellant called was unusual for an employee who had worked only a week and a half.

About 5:30 p.m. on April 5, Combs left the restaurant to make the IHOP's daily deposit. She had $3,000 or more in her purse. Her husband, Gary, and their two daughters had arrived to take her to the bank. The eight-year-old daughter came into the restaurant to get her mother while the three-year-old daughter remained in the Combs' maroon car with her father. As the eldest child got in the front seat and Elvira Combs was getting in the back seat, Gary Combs yelled "Elvira, we're about to get robbed." A man had been seen getting out of a gray car in the parking lot of the restaurant. He was carrying a gun and wearing a greenish ski mask. Combs heard her husband's scream, and turned to see a masked man waving a black gun at her daughter in the front seat.[3]

Elvira Combs moved in front of her daughter and the gunman pointed the gun at Comb's head and demanded: "Hand me your bag." She could not recognize the voice as the man was whispering. The man weighed about 150 pounds, was of medium height from 5'6" to 5'10", had a medium to husky build, was wearing denim jeans, a white hooded shirt, and a dark colored mask with speckles. The man grabbed Combs's purse with the deposit money and ran. The gunman ran across

---

[3] The mask was identified as State's exhibit number one and the gun was identical in appearance or similar to State's exhibit number three.

the adjoining parking lot of the steak house next door and in the direction of an access road next to Zilker Park. The gray car drove around the IHOP restaurant apparently to meet the gunman. Elvira Combs went to call "911" and Gary Combs, with the family out of the car, began to pursue the gunman.

Gary Combs almost hit the gunman with his car. The gunman took off his mask, threw it down, then slipped and fell on the side of the road. Combs briefly saw the face of the gunman and observed that it was an African-American man whose teeth were red from his bloody lip, apparently from his fall. Combs did not get a good look at the man before the man ran off into the thick woods of Zilker Park. Combs drove his car back onto the access road, drove over a hill and saw the gray car. It had pulled into a park entrance off the access road and made a U-turn to face the access road. Combs drove his vehicle right up next to the driver of the gray car and got a good look at the driver from a distance of three to four feet. The driver was an African-American man with a light complexion or a Mexican-American man with a dark complexion, who had short hair, a thin face, and a goatee. Combs wrote down the license plate number of the gray car. Another car pulled up behind the gray car and the gray car's driver, who was putting on a mask, "took off." Combs returned to the IHOP restaurant and gave the license number and a description of the gray car to Officer Michael Metcalf. The officer determined the license plate number was registered to a Jenkins Johnson. Other police units were alerted over the radio to be on the lookout for a gray car with the license plate number reported.

Dalton Renner, a motorist at the intersection of MoPac and Bee Caves Road, observed the robbery. As the gunman fled, Renner turned into a driveway in order to impede the masked ski mask flew into the air and he fled into the Zilker Park woods.

Danette Contreras, another motorist, observed the robbery from the frontage road next to IHOP and saw the gunman flee. She did not get a good look at his face though he removed his mask as he fled. Contreras observed the gunman being pursued by a maroon car when a gray car approached as if to pick up the gunman. Then, Contreras saw the gunman head into the woods after he was unable to get into the gray car. Contreras then called "911" on her cell phone. She described the gunman as an African-American, 5'7" tall, husky build, wearing a white sweatshirt with a hood. Later, on the other side of Zilker Park, she saw the "silver" car again on Barton Springs Road and got a good look at the driver and described him as a "light-complected black man, skinny." Contreras was still on the phone with "911" and gave "the license plate number from the silver car." She was instructed to return to IHOP where she identified Jenkins Johnson as the driver of the gray or silver car she had seen. She was unable to identify the gunman but knew appellant was not the driver of the gray car.

The co-defendant, Jenkins Johnson, was the State's principal witness. Johnson testified that he had been granted testimonial immunity; that his testimony in the instant case could not be used against him in his own trial for aggravated robbery. Johnson stated that on April 5, 1999, he did not know appellant's last name though appellant was married to Johnson's cousin, and that he had loaned appellant $600 which had not been repaid. On April 5, Johnson received a telephone call from appellant who stated he had "a way" of repaying Johnson the $600 due on the loan.

5

Johnson drove to appellant's house where he learned appellant planned to get the money "from his job," but that they would need a gun. The two men drove to the home of Johnson's friend, Alejandro Alcantara, to borrow a gun. On the way, appellant intimated to Johnson that the gun would be used to commit a robbery at appellant's place of employment. Johnson and appellant borrowed a nine millimeter Baretta handgun from Alcantara and then drove to the Oshman's store in Northcross Mall to purchase ski masks and gloves. Johnson tried on one of the masks prior to purchase and then did so again later in the car. Johnson did not know whether he tried on the same mask both times. According to Johnson, appellant may have tried on one of the masks, either in Oshman's or later in the car. Johnson said appellant was wearing a dark colored turtleneck shirt.

From Oshman's, Johnson related they drove in his gray 1983 Chevrolet Impala to the IHOP where appellant worked, arriving about 4:50 or 5:00 p.m. They drove around the restaurant to "scope out the area." Appellant told Johnson that a female employee would be leaving the restaurant with the money to be deposited. They finally parked in the IHOP parking lot to wait. Appellant then told Johnson that Johnson had to commit the robbery because appellant would be recognized by his voice. Appellant agreed to meet Johnson in Johnson's car on the other side of the steakhouse adjoining IHOP after the robbery. Both men then donned their masks.

When a lady came out of the restaurant, appellant indicated to Johnson that she was the right person. Johnson testified that he got out of his car, ran towards the woman, and grabbed her purse. Johnson was wearing a white hooded shirt and the gun was in his pants. He may have slightly displayed the gun. After obtaining the purse, he ran to the other side of the steakhouse, but appellant was not there with the car. Someone in another car tried to hit him and barely missed.

6

Johnson stumbled and fell. He took his mask off. At this time, appellant drove up in Johnson's gray car, got out of the car and stood there looking at Johnson. Johnson said that he made no attempt to get into the car but ran into the woods where he dropped the white shirt, the purse, and the gun. He denied that he kept the IHOP money but threw it down with the other items.

Johnson walked through the woods to a Zilker Park bathroom. When he came out, a police officer asked him for identification and arrested him. He was taken back to the IHOP so witnesses could identify him. Later, he was taken to jail and booked.

Alcantara, who had loaned the gun to Johnson, testified that Johnson came to Alcantara's house on the afternoon of April 5, 1999, and asked to borrow the Baretta handgun to go hunting. Appellant was with Johnson but did not engage Alcantara in conversation. Alcantara did not believe the hunting story, but felt Johnson needed the weapon for "protection," and allowed Johnson to borrow it. Alcantara identified appellant at trial as well as the gun recovered from Zilker Park as the weapon that he gave to Johnson.

Lieutenant James O'Leary was the police officer who apprehended Johnson and learned that Johnson was the individual to whom the getaway car was registered. In a search of the woods of Zilker Park, the police recovered a ski mask, a nine millimeter Baretta gun, a white hooded shirt and Elvira Combs' purse with $131. The IHOP money was never recovered. Johnson's car was located on April 7, 1999, and on April 15, the police executed a search warrant and found inside the car a second ski mask, and an Oshman's shopping bag with receipts and tags for ski masks and gloves shown to have been purchased at Oshman's at 4:39 p.m. on April 5, 1999. The car was processed for fingerprints. Johnson's palm prints and fingerprints were lifted from the interior of the car and

identified as his by a fingerprint expert. Johnson's known thumb print matched a latent print on a clothing tag found in the car. Appellant's known palm print matched two latent palm prints lifted from the exterior trunk of Johnson's car. The expert could not tell how old appellant's latent prints were, but based upon the details of the prints, believed them to be of recent origin.

Michael Villegas, an IHOP manager, testified that appellant never returned to work after April 5, 1999, and never returned to claim his paycheck. Jane Burgett, a DNA serology analyst with the Texas Department of Public Safety, testified that she conducted a comparison of the DNA extracted from a skin cell taken from the ski mask found in the woods and the DNA extracted from appellant's blood sample. Appellant's DNA matched the DNA extracted from the ski mask to a "reasonable degree of scientific certainty." Burgett, of course, did not know when the skin cell was left on the mask. Burgett excluded Johnson as a possible contributor of the DNA found in the mask recovered from the woods. She also tested the DNA taken from the ski mask found in Johnson's car which contained "a mixture of at least two individuals." Appellant was excluded as a possible contributor of the DNA found in this mask, but Johnson could not be excluded as a contributor of the DNA.[4]

Detective Elsa Gilchrest interrogated Johnson shortly after the robbery. He denied any involvement in the offense and claimed not to know "Anthony's" last name. Appellant surrendered to authorities on May 5, 1999, a month after the charged offense. Gilchrest identified the gun in question as a firearm, a deadly weapon.

---

[4] The State notes that Johnson testified that he tried on one of the masks at Oshman's and that the masks were available to other potential customers to do the same thing.

After the State rested its case, appellant did not testify. He only recalled State's witness Detective Perry Madison, to establish that Madison had taken a saliva sample from appellant but not from Jenkins Johnson.

## Indictment

The indictment, omitting its formal parts and the allegations as to the prior convictions, provided in pertinent part that appellant, on or about April 5, 1999:

> did then and there, while in the course of committing theft of property and with intent to obtain and maintain control of said property, intentionally and knowingly threaten and place Elvira Combs in fear of imminent bodily injury and death, and Anthony Barnes did then and there use and exhibit a deadly weapon, to-wit: a firearm.

It is clear that the indictment charged appellant as a primary actor. There were no allegations charging appellant as a party to the offense. This was unnecessary because the law of parties may be applied to a case even though no such allegation is contained in the indictment. *Jackson v. State*, 898 S.W.2d 896, 898 (Tex. Crim. App. 1995); *Pitts v. State*, 569 S.W.2d 898, 890 (Tex. Crim. App. 1978); *Howard v. State*, 966 S.W.2d 821, 824 (Tex. App.—Austin 1998, pet. ref'd); *Pesiva v. State*, 949 S.W.2d 374, 377 (Tex. App.—San Antonio 1997, no pet.); *see generally* 43 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 31.197 (2d ed. 2001).

## Parties

A person is criminally responsible as a party to an offense if the offense is committed by the conduct of another for which he is criminally responsible. Tex. Pen. Code Ann. § 7.01(a)

(West 1994). A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id*. § 7.02(a)(2).

Under the law of parties, the State is able to enlarge a defendant's criminal responsibility to acts in which he may not be the primary actor. *See Goff v. State*, 931 S.W.2d 537, 544 (Tex. Crim. App. 1996); *Romo v. State*, 568 S.W.2d 298, 300 (Tex. Crim. App. 1977) (op. on reh'g). When an accused promotes or assists in the commission of an offense, he also shares the criminal responsibility. *See Haddad v. State*, 860 S.W.2d 947, 950 (Tex. App.—Dallas 1993, pet. ref'd). If the State is to prove the accused's guilt as a party, it must first prove the guilt of another person as the primary actor. *See Richardson v. State*, 879 S.W.2d 874, 882 (Tex. Crim. App.1993); *Forbes v. State*, 512 S.W.2d 72, 79 (Tex. Crim. App. 1974); *Godwin v. State*, 899 S.W.2d 387, 389 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd). In order to establish liability as a party, it must be shown that, in addition to the illegal conduct by the primary actor, the accused harbored the specific intent to promote or assist the commission of the offense. *See Lawton v. State*, 913 S.W.2d 542, 555 (Tex. Crim. App. 1995); *Tucker v. State*, 771 S.W.2d 523, 530 (Tex. Crim. App. 1988); *Garcia v. State*, 871 S.W.2d 279, 281 (Tex. App.—El Paso 1994, no pet.) (holding evidence must show conduct constituting the offense plus an act or acts by accused done with the intent to promote or assist such conduct). The accused must know that he was assisting in the offense's commission. *See Amaya v. State*, 733 S.W.2d 168, 174-75 (Tex. Crim. App. 1986); *Price v. State*, 911 S.W.2d 129, 131 (Tex. App.—Corpus Christi 1995, pet. ref'd). The agreement, if any, *must be before or contemporaneous* with the criminal event. *See Beier v. State*, 687 S.W.2d 2, 3-4 (Tex. Crim. App. 1985); *Miranda v. State*, 813 S.W.2d 724, 732 (Tex. App.—San Antonio 1991, pet. ref'd). The

evidence must show that *at the time of the commission of the offense*, the parties were acting together, each doing some part of the execution of the common design. *See Brooks v. State*, 580 S.W.2d 825, 831 (Tex. Crim. App. 1979); *Thomas v. State*, 915 S.W.2d 597, 599-600 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd); *Cornejo v. State*, 871 S.W.2d 752, 755-56 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd).

While an agreement of the parties to act together in a common design seldom can be proved by direct evidence, reliance may be had on the actions of the parties, showing by either direct or circumstantial evidence, an understanding and common design to do a certain act. *See Burdine v. State*, 719 S.W.2d 309, 315 (Tex. Crim. App. 1986); *Ex parte Prior*, 540 S.W.2d 723, 727-28 (Tex. Crim. App. 1976); *Bratcher v. State*, 771 S.W.2d 175, 183 (Tex. App.—San Antonio 1989, no pet.). Circumstantial evidence alone may be sufficient to show that one is a party to the offense. *See Wygal v. State*, 555 S.W.2d 465, 469 (Tex. Crim. App. 1977); *see also Beardsley v. State*, 738 S.W.2d 681, 684 (Tex. Crim. App. 1987).

The State must show more than mere presence to establish participation in a criminal offense. *See Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. 1981). Mere presence or even knowledge of an offense does not make one a party to the offense. *See Oaks v. State*, 642 S.W.2d 174, 177 (Tex. Crim. App. 1982); *Acy v. State*, 618 S.W.2d 362, 365 (Tex. Crim. App. 1981); *see also Monroe v. State*, 81 S.W.2d 726, 727 (Tex. Crim. App. 1904) (holding the mere fact that defendant, who was present but did not participate or aid in homicide, concealed the offense for a time or failed to report killing, did not make him guilty of an offense). Nevertheless, mere presence is a circumstance tending to prove that a person is a party to the offense, and when taken with other facts, may be sufficient to show that he was a participant. *See Wygal*, 555 S.W.2d at 469. In

11

determining whether an accused participated in the offense as a party, the fact finder may examine the events occurring before, during, and after the commission of the offense. *See Thompson v. State*, 697 S.W.2d 413, 416 (Tex. Crim. App. 1985); *Diaz*, 902 S.W.2d at 151-52.

We will next examine the standard of review applicable to determining the legal sufficiency of the evidence to sustain the conviction.

**Legal Sufficiency**

The standard for reviewing the legal sufficiency of evidence is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense charged. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Skillern v. State*, 890 S.W.2d 849, 879 (Tex. App.—Austin 1994, pet. ref'd). The standard of review is the same in both direct and circumstantial evidence cases. *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995); *Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992). The State may prove its case by circumstantial evidence if it proves all of the elements of the charged offense beyond a reasonable doubt. *Easley v. State*, 986 S.W.2d 264, 271 (Tex. App.—San Antonio 1998, no pet.) (citing *Jackson*, 443 U.S. at 319). The sufficiency of the evidence is determined from the cumulative effect of all the evidence; each fact in isolation need not establish the guilt of the accused. *Alexander v. State*, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987). It is important to remember that all the evidence the jury was permitted, properly or improperly, to consider must be taken into account in determining the legal sufficiency of the evidence. *Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994); *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993); *Rodriguez v. State*, 939 S.W.2d 211, 218 (Tex. App.—Austin 1997, no pet.).

The jury is the exclusive judge of the facts proved, the weight to be given the testimony, and the credibility of the witnesses. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Alvarado v. State*, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). The jury is free to accept or reject any or all of the evidence presented by either party. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). The jury maintains the power to draw reasonable inferences from basic facts to ultimate fact. *Welch v. State*, 993 S.W.2d 690, 693 (Tex. App.—San Antonio 1999, no pet.); *Hernandez v. State*, 939 S.W.2d 692, 693 (Tex. App.—Fort Worth 1997, pet. ref'd). Moreover, the reconciliation of evidentiary conflicts is solely within the province of the jury. *Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995).

Under the *Jackson* standard, the reviewing court is not to position itself as a thirteenth juror in assessing the evidence. Rather, it is to position itself as a final due-process safeguard insuring only the rationality of the fact finder. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). It is not the reviewing court's duty to disregard, realign, or weigh the evidence. *Id.* The jury's verdict must stand unless it is found to be irrational or unsupported by more than a "mere modicum" of evidence, with such evidence being viewed in the light of *Jackson*. *Id.* The legal sufficiency of the evidence is a question of law. *McCoy v. State*, 932 S.W.2d 720, 724 (Tex. App.—Fort Worth 1996, pet. ref'd).

**Discussion—Legal Sufficiency**

The State established through Jenkins Johnson, its principal witness, that he (Johnson) was the primary actor in the aggravated robbery; that with a borrowed gun and wearing a mask, he

alone accosted Elvira Combs and took her purse which she said contained the money to be deposited for IHOP. Johnson made clear that he was aided and assisted in this ill-fated endeavor by appellant, who was driving Johnson's car and who agreed to pick up Johnson after the robbery. In fact, Johnson stated that the robbery was appellant's idea. This finds support in testimony that appellant prematurely asked questions in training about how IHOP's receipts were deposited and his three telephone calls to IHOP on the day of the robbery. Appellant told Johnson a gun would be needed and he was with Johnson when they obtained a gun from Johnson's friend. Appellant was with Johnson when Johnson purchased the ski masks and gloves. Johnson reported that he and appellant drove to the IHOP's parking lot. It was here, according to Johnson, that appellant backed out of his role as gunman for fear of recognition and insisted that Johnson execute the robbery. Appellant pointed out Elvira Combs to Johnson who then committed the offense charged. Johnson related his flight from the scene, and his escape into the woods.

Here, the State offered evidence of the guilt of the primary actor and offered proof of appellant's specific intent to assist and of assisting in the commission of the offense, each party doing some part of the execution of the common design. Intent and knowledge can be inferred from the acts, conduct, and words of the accused. *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. 1988); *Skillern*, 890 S.W.2d at 880. There was evidence, both direct and circumstantial, that appellant knew of Johnson's intent to commit the robbery and, being present, acted with the intent to assist in the commission of the offense at the very time the offense occurred.

There, of course, were some conflicts in the evidence. Johnson said that he was the gunman and eventually fled into the woods of Zilker Park without ever getting back into his car. Greg Combs and Contreras each identified Johnson as the man who was driving the gray car after the

14

robbery occurred. Neither could identify the gunman they saw fleeing the scene after the robbery. There was a conflict between the physical description of the gunman and the man seen driving the gray car subsequent to the robbery. The DNA found in the ski mask abandoned in the Zilker Park woods where Johnson said he discarded several items matched appellant's DNA, not Johnson's. Yet Johnson was apprehended near Zilker Park walking away from a restroom. The gray car was not discovered for several days. Reconciliation of evidentiary conflicts is solely that of the trier of the facts—in this case, the jury. *Heiselbetz*, 906 S.W.2d at 504; *Miranda v. State*, 813 S.W.2d 724, 733-34 (Tex. App.—San Antonio 1991, pet. ref'd).

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt all the essential elements of aggravated robbery and appellant's guilt as a party to the offense. When different theories of liability are submitted to the jury in the disjunctive, a general verdict is sufficient if the evidence supports one of the theories. *See Rabbani v. State*, 847 S.W.2d 555, 558-59 (Tex. Crim. App. 1995).

**Factual Sufficiency**

In his second point of error, appellant also challenges the factual sufficiency of the evidence. A review of the factual sufficiency of the evidence begins with the presumption that the evidence supporting the judgment was legally sufficient. *See Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). In such a review, we consider the evidence without employing the prism of "in the light most favorable to the verdict." *Id.* at 129. A reviewing court must consider all the evidence impartially, comparing evidence that tends to prove the existence of a disputed fact or facts with evidence that tends to disprove that fact or those facts. *Santellan v. State*, 939 S.W.2d 155, 164

(Tex. Crim. App. 1997). The verdict or judgment is to be set aside only when the factual finding is against the great weight and preponderance of the evidence so as to be clearly wrong and unjust. *Clewis*, 922 S.W.2d at 129. In the factual sufficiency analysis, it must be remembered that the trier of fact is the sole judge of the weight and credibility of the testimony. *Santellan*, 939 S.W.2d at 164. Appellate courts should be on guard not to substitute their own judgment in these matters for that of the trier of fact. *Id.* One principle of the factual sufficiency analysis is deference to the findings of the jury or other fact finder. *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Moreover, "[a] decision is not manifestly unjust merely because the jury [or fact finder] resolved conflicting views of the evidence in favor of the State." *Id.* at 410.

In the latest clarification of the standard of review involved, the Court of Criminal Appeals made clear that the *Clewis* criminal factual sufficiency review encompasses both formulations utilized in civil jurisprudence. Thus, in conducting a *Clewis* sufficiency review of the elements of a criminal conviction, an appellate court must ask whether a neutral review of all the evidence, both for or against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine the confidence in the jury's determination, *or* that the proof of guilt, although adequate taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

We have already found the evidence legally sufficient to support the conviction. Our neutral review of all the evidence under this point of error, both for and against the finding, does not demonstrate that the proof of appellant's guilt as a party to the offense is so obviously weak as to undermine confidence in the jury's verdict, or that proof of his guilt as a party, although adequate taken alone, is greatly outweighed by contrary proof. The second point of error is overruled.

## Accomplice Witness Rule

Appellant raises another sufficiency issue under points of error one and two that could properly be a separate point of error in view of recent case law. Appellant contends that the evidence is insufficient under article 38.14 of the Code of Criminal Procedure which provides:

> A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

Tex. Code Crim. Proc. Ann. art. 38.14 (West 1979).

The accomplice witness rule imposes a sufficiency review that would not otherwise be conducted by appellate courts. *Taylor v. State*, 10 S.W.3d 673, 684 (Tex. Crim. App. 2000). Legal and factual sufficiency standards do not apply to a review of accomplice witness testimony. *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999); *Hernandez v. State*, 10 S.W.3d 812, 824 (Tex. App.—Beaumont 2000, no pet.). The rule is not derived from federal or state constitutional principles that define the legal and factual sufficiency standards. *Cathey*, 992 S.W.2d at 462-63. Moreover, uncorroborated accomplice witness testimony can be sufficient to support a conviction under legal and factual sufficiency standards. *See Taylor*, 10 S.W.2d at 684. On the other hand, under the state statutory law, if the prosecution fails to produce non-accomplice evidence tending to connect the accused to the offense charged, then the accused is entitled to an acquittal on appeal. *See* Tex. Code Crim. Proc. Ann. art. 38.17 (West 1979); *Munoz v. State*, 853 S.W.2d 558, 559-60 (Tex. Crim. App. 1993). Appellate review requires that the evidence meet the demands of the statute. 43 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 31.241 (2d ed. 2001).

17

The test as to the sufficiency of corroboration of the accomplice witness is to eliminate from consideration the evidence of the accomplice witness and then to examine the evidence of the non-accomplice witnesses with the view to ascertain if there be inculpatory evidence, that is, evidence of an incriminating character, which tends to connect the defendant with the commission of the offense. If there be such evidence, the corroboration is sufficient; otherwise, it is not. *Reed v. State*, 744 S.W.2d 112, 125 (Tex. Crim. App. 1988); *Edwards v. State*, 427 S.W.2d 629, 632 (Tex. Crim. App. 1968); *see also Hernandez v. State*, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997). It is not necessary that the corroborating evidence directly connect the defendant to the crime or that it be sufficient by itself to establish guilt; it need only tend to connect the defendant to the offense. *Cathey*, 992 S.W.2d at 462. Even apparently insignificant evidence of incriminating circumstances may sometimes afford satisfactory evidence of corroboration. *Trevino v. State*, 991 S.W.2d 849, 852 (Tex. Crim. App. 1999). All facts and circumstances in evidence may be looked to as furnishing the corroboration necessary. *Mitchell v. State*, 650 S.W.2d 801, 807 (Tex. Crim. App. 1983). And each case must be considered on its own merits. *Munoz*, 853 S.W.2d at 559. The combined cumulative weight of the incriminating evidence from the non-accomplice witnesses which tends to connect the accused with the commission of the offense furnishes the test. *Mitchell*, 650 S.W.2d at 807.

In the instant case, the trial court in its charge designated Jenkins Johnson as an accomplice witness as a matter of law and further instructed the jury in accordance with article 38.14. We put aside Johnson's testimony and examine the evidence of the non-accomplice witnesses to determine if there was sufficient corroboration. That evidence shows that a robbery occurred in the parking lot of IHOP about 5:30 p.m. on April 5, 1999. The victim was Elvira Combs who had the IHOP receipts of $3000 or more in her purse. The purse was taken by a masked gunman with a black

handgun. Another man in a gray car was aiding and assisting the masked gunman. Appellant was a recent employee of IHOP, but was not on duty on April 5. During his on-the-job training the previous four days, appellant repeatedly asked premature questions about how the restaurant's receipts were handled, by whom they were deposited, and the mode of transportation to the bank. On April 5, while off duty, appellant telephoned Combs three times to inquire about the day's receipts, and what managers were on duty. Alcantara placed appellant in the company of Johnson shortly before the robbery when they borrowed the handgun, which was identified as being similar to the gun used and exhibited in the robbery and was found in the woods with other items related to the robbery. Testimony that a defendant was with the accomplice witness shortly before the robbery, *Stevenson v. State*, 997 S.W.2d 766, 769 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd), and proof connecting the defendant to the weapon used to commit the crime, *Hernandez v. State*, 939 S.W.2d 173, 178 (Tex. Crim. App. 1997); *Lopez v. State*, 960 S.W.2d 948, 952 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd), are circumstances to be considered in determining sufficient corroboration of the accomplice witness. Mere presence of the defendant at or near the scene of the crime is insufficient to corroborate the accomplice witness, but the defendant's presence, shown by direct or circumstantial evidence, may be sufficient when coupled with other suspicious circumstances. *Trevino v. State*, 991 S.W.2d 849, 851-52 (Tex. Crim. App. 1999).

Two ski masks and two pairs of gloves were purchased at Oshman's shortly before the robbery. One of the ski masks was found in the woods with the gun, the purloined purse, and other items relating to the robbery. The DNA from the skin cell found in the mask matched appellant's known DNA profile. Recently made palm prints found on Johnson's gray car matched appellant's known palm prints. After the robbery, appellant never reported for work at IHOP and

never returned to claim his employment check. An arrest warrant was issued for appellant shortly after Johnson was interviewed by the police. Appellant did not surrender to authorities until a month after the robbery. The IHOP money was never recovered.

All evidence, direct or circumstantial, may be considered in determining the sufficiency of the evidence to corroborate the testimony of the accomplice witness. *Juarez v. State*, 796 S.W.2d 523, 525 (Tex. App.—San Antonio 1990, pet. ref'd).

Analyzing the instant cause on its own facts and circumstances, we conclude that the non-accomplice evidence tends to connect appellant to the offense charged and corroborates the accomplice witness's testimony. Appellant's contention to the contrary is overruled.

## Deadly Weapon Finding

In his third point of error, appellant contends that the trial court erred in including an affirmative finding of the use of a deadly weapon in the judgment when the jury, the trier of facts, made no affirmative finding in its verdict. The entry of an affirmative finding of the use or exhibition of a deadly weapon in the judgment affects a defendant's parole eligibility. Tex. Gov't Code Ann. § 508.145(d) (West Supp. 2001).[5] Thus, the improper entry of an affirmative finding is of vital importance to a convicted defendant in many cases, although it may be immaterial when the defendant is convicted of aggravated robbery as in the instant case. *See id.*; Tex. Code Crim. Proc. Ann. art. 42.12, § 3(g)(1)(A), (C), (D), (E), (F) or (H) (West Supp. 2001). Persons convicted of certain serious offenses, including aggravated robbery, or those convicted of any offense where the judgment

---

[5] The current code is cited for convenience. The statute in effect at time of the charged offense was Act of May 8, 1997, 75th Leg., R.S., ch. 165, § 12.01, 1997 Tex. Gen. Laws 327, 425-26 (Tex. Gov't Code § 508.145(d), since amended but unchanged).

20

contains an affirmative finding of the use or exhibition of a deadly weapon carry the same statutory parole eligibility. Tex. Gov't Code Ann. § 508.145 (West Supp. 2001).

Nevertheless, we do not know the effect an improper affirmative finding may have on appellant's parole eligibility under the guidelines established by the Board of Pardons and Paroles. *See id*. § 5.08.144 (West 1998); *Rachuig v. State*, 972 S.W.2d 170, 179 (Tex. App.—Waco 1998, pet. ref'd). Thus, we will determine the validity of the affirmative finding complained of by appellant.

The indictment charged appellant as the primary actor in an aggravated robbery by using and exhibiting a deadly weapon "to wit: a firearm," one of the several statutory means which elevate the offense of robbery to the offense of aggravated robbery. Tex. Pen. Code Ann. § 29.03 (West 1994). Appellant raises no issue about lack of notice that the State intended to seek an affirmative finding in view of the indictment's allegations. After conclusion of the evidence at the guilt/innocence stage of the trial, the trial court submitted a charge authorizing the jury to find appellant guilty as a primary actor or as a party to the charged offense. As noted earlier, the indictment did not charge appellant as a party. It was not required. *See Pitts*, 569 S.W.2d at 890. Having been charged on the law of parties, the jury returned a general verdict: "We, the Jury, find the defendant, Anthony Barnes, guilty of the Offense of Aggravated Robbery." It is not possible to tell whether the jury found appellant guilty as a primary actor or as a party. When different theories are submitted to the jury in the disjunctive as in the instant case, a general verdict is sufficient if the evidence supports one of the theories of liability submitted. *See Ladd v. State*, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999); *Fuller v. State*, 827 S.W.2d 919, 931 (Tex. Crim. App. 1992); *Kitchens v. State*, 823 S.W.2d 256, 257-58 (Tex. Crim. App. 1991). As previously noted, we found the evidence

21

sufficient to support appellant's conviction as a party to the charged offense. The jury as the trier of fact returned only the general verdict.

Article 42.12, section 3g(a), places limitations on the right of a trial court to grant or order community supervision or probation. Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a) (West Supp. 2001). In addition to certain designated offenses, the statute provides that the trial court may not grant community supervision:

> (2) to a defendant when it is shown that a deadly weapon as defined in Section 1.07, Penal Code, was used or exhibited during the commission of a felony offense or during immediate flight therefrom, and that the defendant used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited. *On an affirmative finding under this subdivision, the trial court shall enter the finding in the judgment of the court. On an affirmative finding that the deadly weapon was a firearm, the court shall enter that finding in its judgment.*

*Id.* § 3g(a)(2) (emphasis added).

At the guilt/innocence stage of the trial, there was no affirmative finding by the jury that appellant had personally used a deadly weapon or knew that one would be used or exhibited as required by statute.

The State urges that the trial court was the trier of fact at the punishment hearing and that it had the authority to enter the necessary affirmative finding. However, Judge Lynch presided at the jury trial at the guilt/innocence stage and Judge Campbell presided at the punishment hearing. At this latter hearing, only evidence on punishment was offered and no affirmative finding was discussed or made by Judge Campbell.

22

The formal judgment contained an affirmative finding and was signed by Judge Lynch, but he was not the trier of fact at either stage of the bifurcated trial. The judgment recites in pertinent part:

Findings on Use of a Deadly Weapon: YES, THEREUPON THE COURT FURTHER FOUND THAT A DEADLY WEAPON, TO WIT: A FIREARM; WAS USED BY THE DEFENDANT IN THE COMMISSION OF THIS OFFENSE

Punishment Assessed by: Court

The record does not reflect that this finding was made by the trial court at either stage of the trial but appears to have been simply added to the judgment. This is not the only addition made by the formal judgment. The words "as alleged in the indictment" were added to the jury's verdict. It is unclear whether this gratuitous addition was intended to support the affirmative finding in the judgment.

If appellant's guilt depends upon being a party to the offense, as it does, there is no recitation in the judgment finding that he knew that a deadly weapon would be used or exhibited. It simply asserts that appellant personally used a firearm in the commission of the aggravated robbery. The evidence does not support the theory that appellant as a party personally used a firearm to aid and assist Johnson in the commission of the offense, nor is the evidence sufficient to show that appellant used or exhibited a firearm so as to sustain his conviction as a primary actor to the aggravated robbery charged.

Our situation here is somewhat unique and can be distinguished from most cases dealing with affirmative findings. When the trial court includes a party charge in its jury instructions, the jury must *specifically* find that the defendant used or exhibited a deadly weapon or knew that the

23

same would be used or exhibited. *Taylor v. State*, 7 S.W.3d 732, 740-41 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Broden v. State*, 923 S.W.2d 183, 191 (Tex. App.—Amarillo 1996, no pet.). The jury did not do that here nor was there a special issue submitted on the use of a deadly weapon which might have authorized the finding. *See Davis v. State*, 897 S.W.2d 791, 793 (Tex. Crim. App. 1995). Even if it could be argued that the trial court as trier of fact at the penalty stage of the trial could have entered such finding, *see Flores v. State*, 690 S.W.2d 281, 283 (Tex. Crim. App. 1985), the trial judge at the penalty stage here did not do so.

Article 37.12 requires the trial court to enter "the proper judgment." Tex. Code Crim. Proc. Ann. art. 37.12 (West 1981). Such judgment must accurately recite any affirmative finding as to the use or exhibition of a deadly weapon. *Id.*, art. 42.01, § 21, art. 42.12, § 3g(a)(2) (West Supp. 2001). The affirmative finding improperly entered in the instant judgment will be deleted as well as the improper addition to the jury's verdict set forth in the judgment. We sustain appellant's third point of error.

**Jury Charge**

In his fourth point of error, appellant contends that the trial court *sua sponte* erred in failing to submit a jury instruction requiring the jury to find, if it determined that appellant was a party to the offense, that appellant knew a deadly weapon would be used or exhibited. In view of our disposition of point of error three and the modification of the judgment, the issue presented is rendered moot.

The judgment is modified to delete therefrom the affirmative finding that a deadly weapon was used by appellant during the commission of the offense and the phrase "as alleged in the

indictment" from the jury's verdict as set forth in the judgment. As modified, the judgment is affirmed.

_____

–

John F. Onion, Jr., Justice

Before Justices Kidd, B. A. Smith and Onion*

Modified and, as Modified, Affirmed

Filed:   November 29, 2001

Publish

\*    Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).