# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00646-CR

**Robert Troy McClure, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
NO. CR2005-234, HONORABLE JACK H. ROBISON, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Robert Troy McClure of aggravated robbery. *See* Tex. Penal Code Ann. § 29.03 (West 2003). He was sentenced to forty-five years in prison and assessed a $10,000 fine. In eight issues, McClure argues that the evidence was legally and factually insufficient to prove robbery, that the trial court improperly admitted certain expert testimony, that he received ineffective assistance of counsel, and that his due process rights were violated. We affirm the district court's judgment.

On January 2, 2005, McClure and Kenneth Michael Burks, who lived together at the time of the incident, got into an argument that led to a physical altercation. McClure cut Burks on his neck with a kitchen knife. Burks left to get help, and McClure fled in Burks's car. About one year later, McClure was apprehended in Alaska and extradited to Comal County.

In a two-count indictment, the State charged McClure with one count of aggravated robbery, *see id.*, and one count of aggravated assault, *see id.* § 22.02(a)(1), (2) (West Supp. 2008). At trial, McClure claimed self-defense, arguing that Burks attacked him first with a pistol. During trial, the State abandoned the charge of aggravated assault with a deadly weapon and proceeded on the aggravated robbery count only. The jury was also charged on the lesser-included offense of aggravated assault with a deadly weapon. The State also sought an affirmative finding on the issue of the use of a deadly weapon. The jury found that McClure had used or exhibited a deadly weapon during the commission of the offense and convicted McClure of aggravated robbery. The jury sentenced McClure to forty-five years in prison and assessed a $10,000 fine. The trial court entered judgment on the verdict.

In his first two issues, McClure argues that the evidence was legally and factually insufficient to support the jury's finding on aggravated robbery. McClure contends that the evidence does not show a clear nexus between the assault and the appropriation of the property.

In a legal-sufficiency review, we consider whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *See Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007); *Shams v. State*, 195 S.W.3d 346, 347 (Tex. App.—Austin 2006, pet. ref'd) (citing *Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981)).

2

In a factual-sufficiency review, the evidence is reviewed in a neutral light. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007). Evidence is factually insufficient when (1) the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust, or (2) the supporting evidence is outweighed by the great weight and preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust. *Id.* An appellate court must be appropriately deferential to the jury's verdict, in order to avoid substituting its own judgment for that of the fact-finder. *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002).

We must avoid substituting our judgment for that of the fact-finder, and we should not substantially intrude upon the fact-finder's role as the sole judge of the weight and credibility given to witness testimony. *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). The jury is the sole judge of the weight and credibility of witness testimony. *Barnes v. State*, 62 S.W.3d 288, 298 (Tex. App.—Austin 2001, pet. ref'd). The jury may accept or reject all or any of the evidence presented by either side, may draw reasonable inferences from the evidence, and must reconcile any evidentiary conflicts. *Id.* We determine the sufficiency of the evidence by viewing the cumulative effect of all of the evidence, not each fact in isolation. *Id.* at 297.

As set out in the penal code and the court's charge:

A person commits the offense of aggravated robbery, if he commits the offense of robbery as hereinafter defined, and he:

(1)     causes serious bodily injury to another; or

(2)     uses or exhibits a deadly weapon.

A person commits the offense of robbery if in the course of committing theft as hereinafter defined and with intent to obtain or maintain control of the property, he:

(1)      intentionally, knowingly, or recklessly causes bodily injury to another; or

(2)      intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

A person commits theft if he unlawfully appropriates property with intent to deprive the owner of property.

Appropriation of property is unlawful if it is without the owner's effective consent.

*See* Tex. Penal Code Ann. §§ 29.02, .03 (West 2003), § 31.03 (West Supp. 2008). To find McClure guilty of aggravated robbery, the jury had to find that the injuries sustained by Burks were inflicted by McClure in the course of the theft of Burks's property. *See id.*; *see also Cooper v. State*, 67 S.W.3d 221, 223 (Tex. Crim. App. 2002) (requiring a nexus between the theft and the assault for conviction of robbery).

Burks testified that prior to his confrontation with McClure on the night of the incident, he suspected McClure of stealing his car and two of his credit cards. He had contacted his credit card companies, determined that there had been unauthorized charges made on one of his cards that evening, and canceled that card. When McClure returned to the house, a dispute arose over McClure's use of Burks's car and credit cards. According to Burks, McClure understood that he no longer had permission to use his car or credit cards. Burks told McClure, "You need to go," and "I've got to get out of here," and walked toward his room. Burks went to his room, and while he was putting on his shoes, McClure approached him from behind and cut his throat with a kitchen knife. Burks then ran to a neighbor's house for help. McClure fled with Burks's car and credit card. The

4

evidence showed that McClure used the credit card to get cash the next day. McClure was apprehended in Alaska a year later and extradited to Comal County.

McClure also testified. According to McClure, when he arrived home that evening, Burks was "in a rage" and eventually pulled a gun on him—pointing the gun at his chest. In an attempt to defend himself, McClure claimed he grabbed a kitchen knife. In the course of the fight, McClure testified that he swung the knife to defend himself and may have cut Burks in the process.

In situations where the evidence lends itself to multiple interpretations, it is the jury's duty to weigh the evidence and to adopt the interpretation it deems most plausible. Based on its verdict, the jury chose to believe Burks's version of events and to infer that—faced with Burks's revoking McClure's use of his car and credit cards—McClure had assaulted Burks for the purpose of appropriating Burks's property. This inference is supported by additional evidence, including the location of the only gun in the house,[1] the lack of any hospital records indicating treatment for what McClure alleged was a broken nose resulting from their fight, the fact that McClure fled with Burks's car and credit card, and credit card records showing McClure's later use of the stolen card to get cash despite his assertion that such transaction occurred prior to the fight. It is for the jury to decide which of a number of reasonable interpretations to give conflicting testimony as well as how much weight to give each witness's testimony. *Jones*, 944 S.W.2d at 648; *Barnes*, 62 S.W.3d at 298. As we may neither substitute our own judgment for that of the fact-finder nor re-weigh the evidence, we conclude that the evidence is factually sufficient to support the jury's verdict. *Id.* Likewise,

---

[1] The only weapon found in the house during the investigation was a pistol located in a zipper case inside a closed drawer and underneath some clothing.

viewing all the evidence in the light most favorable to the verdict and assuming that the jury resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict, we conclude that the evidence is legally sufficient to support the jury's verdict. *See Rollerson*, 227 S.W.3d at 724; *Shams*, 195 S.W.3d at 347. Accordingly, we overrule McClure's first two issues.

In his third issue, McClure argues that the trial court improperly admitted certain testimony of Dr. Neil McMullin, the State's medical expert. According to McClure, Dr. McMullin's testimony as to what direction the wounds had been inflicted was forensic testimony, not medical testimony, and should not have been admitted as unqualified opinion testimony pursuant to Texas Rule of Evidence 702. The State contends that Dr. McMullin's testimony was a medical opinion to which he was qualified to testify.

We review a trial court's decision on the admission or exclusion of evidence for an abuse of discretion. *Ellison v. State*, 201 S.W.3d 714, 723 (Tex. Crim. App. 2006). Expert testimony is admissible where specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue. Tex. R. Evid. 702; *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997).

The testimony at issue is Dr. McMullin's statement and related testimony that, in his medical opinion, it was unlikely that Burks's wound was caused by his falling forward onto a knife and more likely that the injury was inflicted by someone behind Burks. At trial, the parties disputed how Burks sustained his injury—whether by the intentional act of McClure from behind Burks, or simply as an accidental result of their struggle with the injury occurring from the front or side of

6

Burks. The district court did not abuse its discretion in finding that Dr. McMullin was fully qualified to render his expert medical opinion as to how he believed the wound was inflicted. Rule 702 does not require that Dr. McMullin have had special forensic training to render his medical opinion on the direction of the cut. Even assuming that such testimony was erroneously admitted, however, a review of the record shows that its admission did not affect McClure's substantial rights as it had no substantial or injurious effect on the verdict. *See* Tex. R. App. P. 44.2(b); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

In conducting a harm analysis as to the erroneous admission of expert testimony, we consider everything in the record, including the evidence admitted, the jury instructions, the State's theory, defensive theories, closing arguments, and voir dire. *Motilla v. State*, 78 S.W.3d 352, 356 (Tex. Crim. App. 2002). Important factors are "the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Id.* at 355. We also consider whether the State emphasized the error, whether the erroneously admitted evidence was cumulative, and whether it was elicited from an expert. *Id.* at 356. If the error had only a slight influence on the verdict, the error is harmless. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

A review of the record shows no emphasis by the State on the testimony in question. In addition, other testimony and evidence indicated that the injury had been intentionally inflicted. The jury heard testimony from Rebecca Sanchez, Burks's next door neighbor, that on the evening of January 2, 2005, she went to her front door to investigate a "thump" and found Burks leaning against the wall on her front doorstep and holding his throat, which was bleeding. According to

7

Sanchez, Burks asked her to help him and mentioned that he and his roommate had been drinking and got into a fight over his car. He asked Sanchez whether his car was there, and Sanchez reported that the car was gone. When Sanchez asked Burks who had cut him, he told her that it was "Robin," who was his roommate.[2]

Officer Jermyn Baker, who was dispatched to the scene of the incident on January 2, 2005, testified that Burks told him that Robbie Delphine had cut him. After determining that Burks's residence was empty, Baker surveyed the scene, finding "blood all over the tile, on the wall right inside and on the door. Looking more in the residence, there was some in the—the dining room area, next to the table where the knife was found." Baker also found blood throughout the house. In addition, Baker

> found paperwork that had "Delphine's Restaurant" or "Delphine's Café" on it, and in there I found a name of Robert Delphine. With that paperwork, I also found—or some other paperwork in there, I found a name of Robert McClure, Robert L. McClure, on it and tied those two names together.

Baker, along with other officers who had been present at the scene, testified that their investigation revealed that some sort of disturbance had taken place in the house.

Further testimony indicated that McClure's fingerprints were on the knife that had been used to cut Burks. When presented with a lineup, Burks immediately and without hesitation identified McClure as the perpetrator. Burks testified at trial that McClure cut his throat from behind as he was putting on his shoes following his encounter with McClure. In addition, although McClure

---

[2] "Robin" was later identified to be "Robbie Delphine," another name by which McClure was known.

8

claimed at trial that he had been defending himself against Burks's beating him with a handgun, the only firearm found in the house during the investigation was a pistol located in a zipper case inside a closed drawer and underneath some clothing.

Even absent Dr. McMullin's testimony, reviewing the entire record, the evidence was sufficient for the jury to determine that Burks sustained his injury as a result of McClure's intentional acts, not as an accidental result of a struggle. *See Jones*, 944 S.W.2d at 648; *Barnes*, 62 S.W.3d at 298. Therefore, even assuming that such testimony was erroneously admitted, its admission was harmless. *See* Tex. R. App. P. 44.2(b); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Accordingly, we overrule McClure's third point of error.

In his fourth, fifth, sixth, and seventh issues, McClure argues that he received ineffective assistance of counsel. He points to defense counsel's eliciting otherwise inadmissible details as to a prior deferred adjudication for aggravated assault with a deadly weapon and defense counsel's failure to object to allegedly improper impeachment testimony as to McClure's assaultive propensity and prior assault convictions, as well as to an allegedly improper closing argument.

We evaluate claims of ineffective assistance of counsel against the standard set forth in *Strickland v. Washington*. *See* 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 774 (Tex. Crim. App. 1999). In deciding a claim of ineffective assistance of counsel, we must determine whether an attorney's performance was deficient, and if so, whether that deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). An attorney's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688; *Thompson*, 9 S.W.3d at 812. Deficient

9

performance is prejudicial when, but for the attorney's unprofessional conduct, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. In determining whether an attorney's performance was deficient, we apply a strong presumption that the attorney's conduct was within the range of reasonable professional assistance. *Thompson*, 9 S.W.3d at 814. We review the effectiveness of counsel in light of the totality of the representation and the circumstances of each case. *Id.* at 813.

In most cases, an undeveloped record on direct appeal is insufficient to satisfy the dual prongs of *Strickland* because the reasonableness of counsel's decisions often involves facts not appearing in the appellate record. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). Without evidence of the strategy and methods involved concerning counsel's actions at trial, an appellate court should presume a sound trial strategy. *See Thompson*, 9 S.W.3d at 814. If no reasonable trial strategy could justify trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects trial counsel's subjective reasons for acting as he did. *Andrews*, 159 S.W.3d at 102.

McClure argues that defense counsel's eliciting otherwise inadmissible details as to a prior deferred adjudication for aggravated assault with a deadly weapon amounted to deficient performance. McClure does not challenge defense counsel's decision to inform the jury of the conviction itself, recognizing that "the decision to inform the jury may have had a strategic basis, particularly in explaining why Appellant fled after the altercation with the complainant and did

10

not contact police afterward." Rather, McClure challenges defense counsel's elicitation of the details of the conviction.

Eliciting such details could have been a part of defense counsel's reasonable trial strategy. Prior convictions may be admissible to rebut a defensive theory. *See* Tex. R. Evid. 404(b). Here, McClure raised the issue of self-defense, and it was likely that the details of the offense would have been admitted to rebut this theory, as in the previous instance of assault, McClure had claimed self-defense but had ultimately pled guilty. In eliciting details of the offense, defense counsel gave McClure the opportunity to explain his version of the prior offense in the best light possible before being cross-examined by the prosecutor. McClure explained that he had not been the aggressor in that situation, but had been acting in self-defense. Without a developed record from which to determine defense counsel's strategy, we cannot conclude that his elicitation of details from McClure about the previous instance of assault did not relate to some reasonable trial strategy. *See Ortiz v. State*, 93 S.W.3d 79, 88-89 (Tex. Crim. App. 2002) ("If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal.").

McClure also points to defense counsel's failure to object to allegedly improper impeachment testimony as to McClure's history of assault. The exchange at issue is the prosecutor's question: "You have an assaultive history, do you not, Mr. McClure?" along with McClure's response: "I do. I protect myself." At this point in trial, the jury already knew that McClure had previous convictions and was on deferred adjudication for aggravated assault. In light of this

11

testimony, defense counsel may have determined it best to allow McClure to confront and directly respond to the likely perception of the jurors at this point—that McClure did, indeed, have an assaultive history. Defense counsel may have thought it best to allow McClure to offer an explanation, which McClure did. As acknowledged by McClure in his briefing, "the record does not demonstrate trial counsel's reasoning for his failure to object." Again, without a developed record from which to determine defense counsel's strategy, we cannot conclude that his failure to object did not relate to some reasonable trial strategy. *See id.*

McClure also points to defense counsel's failure to object to the admission of prior assault convictions. Prior convictions may be admissible to rebut a defensive theory. *See* Tex. R. Evid. 404(b). In this case, the defense's theory was that McClure cut Burks while acting in self-defense. Although the State did not demonstrate under which theory it sought to rebut McClure's claim of self-defense, the intent could have been to have the testimony admitted to show that McClure has repeatedly responded to perceived aggression with the use of a disproportionate or unreasonable amount of force. It is also possible that defense counsel or McClure welcomed the admission of the prior convictions for the purpose of negating intent—e.g., that McClure had been forced to defend himself in those situations just as he had in his confrontation with McClure. Again, without a developed record from which to determine defense counsel's strategy, we cannot conclude that his failure to object did not relate to some reasonable trial strategy. *See Ortiz*, 93 S.W.3d at 88-89.

Finally, McClure argues that defense counsel's representation was deficient because defense counsel failed to object to the State's argument during closing directing the jury to

12

consider McClure's prior offenses. Permissible jury argument includes summation of the evidence, reasonable deduction from the evidence, answer to argument of opposing counsel, and plea for law enforcement. *Allridge v. State*, 762 S.W.2d 146, 155 (Tex. Crim. App. 1988). To warrant reversal, argument must be manifestly improper, violate a statute, or inject new, harmful facts into the case. *Everett v. State*, 707 S.W.2d 638, 640 (Tex. Crim. App. 1986). The jurors knew from the testimony that McClure had been convicted of multiple prior offenses for assaultive conduct. At the time such testimony was admitted, no limiting instruction was requested or given. By the time of the State's closing argument, jurors may already have concluded that the admitted testimony showed McClure's general propensity toward violence or assaultive conduct. Therefore, even if failure to object to this argument during closing amounted to deficient performance, it did not unfairly prejudice McClure.

We find no basis for McClure's claim of ineffective assistance of counsel. Accordingly, we overrule McClure's fourth through seventh issues.

In his eighth issue, McClure argues that his due process rights were violated when he was shackled during the punishment phase of trial. Although the routine use of shackles during the guilt/innocence phase of a criminal trial is generally prohibited, the use of shackles may be justified in certain circumstances. *Long v. State*, 823 S.W.2d 259, 282 (Tex. Crim. App. 1991); *Wynn v. State*, 219 S.W.3d 54, 59 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Moreover, the United States Supreme Court recently held that this general prohibition also applies when a defendant is shackled during the punishment phase of trial. *See Deck v. Missouri*, 544 U.S. 622, 630-33 (2005). A court's finding that shackling is justified is reviewed for abuse of discretion. *Long*, 823 S.W.2d at 282; *Wynn*, 219 S.W.3d at 60.

13

On the second day of the punishment phase of McClure's trial, the district court expressly found that shackling was justified, and McClure remained shackled before the jury for the remainder of the punishment phase of the trial. All efforts should be maintained to prevent the jury from seeing the defendant in shackles, except where there has been a showing of exceptional circumstances or a manifest need for such restraint. *Long*, 823 S.W.2d at 282; *Wynn*, 219 S.W.3d at 61. The general need for courtroom security or a general reference to the severity of the charged offense is insufficient to justify shackling. *Long*, 823 S.W.2d at 283; *Wynn*, 219 S.W.3d at 59. Factors that can be considered to determine whether shackling is justified include evidence of a possible attempt to escape, acts or threats of physical violence in court, behavior in court that is disruptive, unruly, or non-conforming, behavior in custody that is aggressive and volatile, and a violent criminal history. *United States v. Fields*, 483 F.3d 313, 356-57 (5th Cir. 2007); *Boone v. State*, 230 S.W.3d 907, 911 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

According to the district court, McClure's shackling was justified because of his history of assaults, his assaultive behavior in custody, and his verbal outburst in court during a pretrial hearing. *See Culverhouse v. State*, 755 S.W.2d 856, 860 (Tex. Crim. App. 1988) (record must affirmatively reflect reasons for shackling, not in general terms but with particularity). During the previous day of the punishment phase, the court had heard testimony of McClure's criminal history over the past ten years, which included, in addition to the aggravated robbery for which he had been found guilty in the present case, three misdemeanor assaults, an "attempted resisting," and an aggravated assault with a deadly weapon. The court had also heard testimony of McClure's aggressive and volatile history over the past year in custody, which included multiple fights with other inmates, one of which required the other inmate to have surgery on his face, multiple

14

incidents of threats made to other inmates, and several instances of defiant behavior toward correction officials.

We recognize that the district court did not find that McClure had acted dangerously or disruptively during the guilt/innocence phase of the trial, or that new events had occurred to prompt shackling during the remainder of the trial. McClure's history of assaults, assaultive behavior in custody, and verbal outburst in court all preceded the guilt/innocence phase, during which he was unshackled without incident. Nevertheless, while another judge might have ruled differently, upon our review of the district court's reasons stated on the record for McClure's shackling, we conclude that McClure has not shown that there was an abuse of discretion. We decline to hold that the mere fact that McClure demonstrated good conduct during one phase of the trial means that the decision to restrain him was an abuse of discretion, in light of his extensive history of violence and assaultive conduct. *See Culverhouse*, 755 S.W.2d at 860. We conclude that the trial court acted within its discretion in allowing the use of shackles. Accordingly, we overrule McClure's eighth issue.

Having overruled each of McClure's issues, we affirm the judgment of conviction.

_____

G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Waldrop and Henson

Affirmed

Filed: December 4, 2008

Do Not Publish