J. A. BARNETT v. THE STATE.

No. 13941.  Delivered February 4, 1931.

The opinion states the case.

*B. W. Baker,* of Carthage, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for torturing a mule; punishment, a fine of $25.00.

We are confronted at the outset with appellant's attack upon the information for its failure to use the word "wilful" in charging the offense.  We have now no offense in this State whose definition is the wilful or wanton killing of a domestic animal.  Conway v. State, 112 Texas Crim. Rep., 290, 16 S. W. (2d) 228.  Article 1374 of our Penal

Code was enacted in 1919 subsequent to the date of all the opinions cited thereunder in Vernon's P. C. of 1925, and it is not now deemed necessary to use the word "wilful" in charging any of the offenses defined in said article, save that of "wilfully overloading" some animal in an appropriate case. Nor is it necessary in charging the offense of torturing an animal, which is included in the terms of said article, to allege that same was needless, or that same was done in a cruel and inhuman manner. The latter part of said article specifically sets forth what acts are included in the word "torture", and it was evidently the intention of the legislature that upon an allegation of torturing such animal, and a setting out of what was done, the offense would be satisfactorily alleged.

Appellant was charged with torturing a mule by shooting same. The facts sufficiently show that appellant did shoot said animal in the head, putting out one of its eyes. The shooting occurred in the nighttime, and at a point near appellant's home. It appears from the testimony that there was no stock law in force in said locality. As far as we can determine from the record there was open country between the home of the owner of said mule, and the home of appellant where the shooting occurred. We learn from the record that on Friday before the shooting Saturday night a neighbor of appellant observed the mule in question reaching over appellant's fence toward some growing corn, and that in attempting to get to the corn the mule had pushed some rails off the fence. The next morning appellant was at the home of the owner of said mule when the latter was turned out on the common and asked said owner not to turn the mule out but to put it in the pasture, telling him at the time of the information he had received relative to the act of the mule in trying to get to his growing crops.

We find nothing in this record indicating the kind or character or make-up of appellant's fence, save that it was referred to as a rail fence. Nothing indicates its heighth or the manner of its construction otherwise. Some time Saturday night appellant was awakened by a noise which he testifies sounded like the breaking of a fence or a gate. He jumped out of bed, grabbed up his ten gauge double-barreled shot gun and went out of his house. According to his own testimony as he "approached the place something ran from the fence into the woods and I shot in the direction it went to scare it away so that it would not come back. It was so dark I could not tell whether it was a mule, horse or cow, and I shot in the direction of the noise it was making as it ran through the woods. I shot at the noise to scare whatever it was away from my fence and to protect my fence and my corn crop. * * * I shot No. 4 shot from a ten gauge shot gun, and I shot twice. About fifty panels of my rail fence was pushed down. * * * It was not all down but rails pushed off. The row of corn next to the fence was damaged by being eaten off." Witnesses for the State testified that they examined the

ground the next morning on the outside of appellant's fence, and that they tracked the mule by its blood on the ground from where it was found after the shooting to a point about thirteen steps from appellant's fence. There they said the tracks of the mule indicated that he had wheeled and run away evidently after being shot.

We find in the record four bills of exception. The first brings forward complaint of the refusal of the court to quash the information. We think the court correctly overruled said motion.

The second bill of exception presents complaint of the charge of the court for failing to submit the affirmative defense of the defendant to the effect that he shot at the animal as it ran away from defendant's fence in order to scare it away so it would not return and depredate upon defendant's crop. In our opinion a charge of this character would be unwarranted. Our statute, Article 1372, P. C., punishes any person who has an insufficient fence, who maims, wounds or kills any cattle, horses, etc., within the enclosure surrounded by such fence. Certainly if one might not shoot an animal inside an enclosure surrounded by an insufficient fence, he might not under similar circumstances shoot one on the outside merely upon the proposition that he did so for the purpose of scaring it away. According to his own testimony appellant had made no investigation at the time he shot, and at said time, as he testified, the animal was running away into the woods. In communities where there is no stock law in force, he who wishes to assert the right to protect his crop against animals, must surround the same by a sufficient fence such as is defined in the article above referred to.

The next bill of exception complains of the refusal of a special charge as follows: "Gentlemen of the Jury: You are instructed that in the event that you should find and believe from the evidence that immediately prior to the time the mule was shot the mule was breaking the fence and eating the corn of defendant, and that defendant shot the mule with intent to scare it away from his property, then you will find defendant not guilty."

What we have just above said may be referred to in justification of the action of the trial court in declining to give said charge. There is no testimony in this case showing that the mule in question was a confirmed fence breaker, or that appellant had around his crop a sufficient fence. That herbivorous animals such as mules, cows, etc., would be attracted by a field of growing corn, is well known to every farmer, and no sort of blame can be attached to such animal for attempting to gratify its taste in this regard when there is no sufficient fence protecting the growing corn thus sought by it. The mule in question was out on the common where it had a perfect right to be. His taste for green corn was according to his nature. If appellant had a sufficient fence, and this did not protect his crop, he would have the right to resort to all.

other reasonable means necessary to effect that end. That he had such fence is not shown. That at the time he shot this mule it was in the act of running away into the woods, is established by his own testimony. That at the time he shot it is was not nearer his fence than thirteen steps, is supported by the State's testimony. Nor do we think it a sound proposition to announce that a man who observes an animal reaching over his insufficient fence, or even pushing at it, to get to corn growing near the fence, has the right to shoot it "with intent to scare it away from his property."

The remaining bill of exception complains of the refusal of another special charge seeking to have the jury instructed that in the event they found that appellant shot said mule, but should further find that it was not done with the intent to torture the mule, they should find appellant not guilty. In this connection we note that in his charge the court told the jury that every person has the right to protect his property from injury, and that he may use all reasonable force to accomplish that object, and that by reasonable force is meant whatever force is necessary to repel invasion and depredation of property. The court also applied this, and told the jury if the animal in question was depredating and seriously injuring the crops of appellant, and that it became reasonably necessary to shoot the mule to protect said crops from injury, then they should acquit the defendant, or if they had a reasonable doubt thereof, they should acquit him. The word "torture" in said Art. 1374, supra, is held to include every act or omission whereby unnecessary or unjustifiable pain or suffering is caused to an animal. Under the charge above given it necessarily followed that the jury believed appellant shot said mule when it was not necessary to do such act to protect his crop, and that such act was hence unjustifiable. We do not think the special charge just referred to presents a correct proposition of law. If the appellant was not justified in shooting the animal, and shooting same was the reasonable result of what appellant did, we think this would show him to be guilty without having any specific intent to torture.

The judgment will be affirmed.

*Affirmed.*