# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00610-CV

**In the Matter of J. A. M.**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. J-19,778, HONORABLE W. JEANNE MUERER, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

This is an appeal from a judgment of delinquency. Appellant, at fifteen years old, was found to have engaged in the delinquent conduct of cruelty to an animal by torture. *See* Tex. Fam. Code Ann. § 51.03 (West 2002); Tex. Pen. Code Ann. § 42.09(a)(1) (West 2003). Appellant allegedly threw a cat into a swimming pool, then prevented the cat from escaping by pushing it underwater and away from the side of the pool with his foot. Appellant waived his right to a jury. After the court found him guilty, appellant was placed on probation for nine months in the custody of his aunt and uncle. He appeals complaining by two grounds of error that (1) the accomplice's testimony was uncorroborated, and (2) the evidence was insufficient to establish the requisite element of torture beyond a reasonable doubt. Because we conclude that the accomplice witness was adequately corroborated and the evidence showing torture was sufficient, we will affirm the judgment.

# FACTUAL BACKGROUND

Sadee McIver owned a gray and white cat which she had raised from a small kitten. At the time of trial, Sadee was twelve and in the seventh grade attending Dessau Middle School. On January 27, 2002, her cat was found dead in the Boulder Ridge Trailer Park near a swimming pool. Her father placed her cat in a bag and buried it in their backyard. Sadee testified that when it was found her cat's underside was wet, but there were no other indications of how the cat died.

Sadee was familiar with appellant, J.A.M., who attended the same school and rode the same bus as Sadee. She was familiar with R.R. and J.L. who were also students at Dessau and appellant's friends. Shortly after her cat was found dead, Sadee was in the school cafeteria before school started. One of her friends told her something[1] about her cat; Sadee moved closer to observe a group of boys. She said the boys were all talking at one time and were using hand gestures. She testified that, "They were like throwing up in the air, stuff like that. . . . They were just doing it – how they were – I don't know how to describe it, how they were doing it." She was asked to specify: "How they were doing what?" And she answered, "Drowning the cat." She testified that it was mostly J.L. who was using the hand gestures, and R.R. and J.A.M., "[t]hey were doing a little bit of them."

She said that J.L. was throwing his hands up in the air and "showing how he was dunking it down . . . trying to show how he was dunking it underwater." She described the boys as excited, smiling, and laughing. She also testified that "[t]hey kept on saying 'cat,'" and J.L.

---

[1] Sadee testified that a friend told her that a group of boys there in the cafeteria was describing how they had drowned a cat similar to Sadee's. The court sustained a hearsay objection, and allowed Sadee to state only that a friend told her something and she moved closer to observe the boys.

described the cat. As for J.A.M. specifically, Sadee testified that while J.L. was describing how they dunked the cat, J.A.M. was listening, smiling, and nodding his head up and down in agreement. Sadee did not hear J.A.M. implicate himself, but she saw him participate in and nod affirmatively about a conversation punctuated by J.L.'s hand signals that seemed to her to refer to the tossing and drowning of a cat.

Sadee said she had a hunch that the boys were talking about her cat. She admitted that at the time the cafeteria was full of students and she could not hear all that the boys said. She did not confront the boys, but instead told Officer Kinnard, the police officer assigned to the school, of the offense and her observations.

In addition to Sadee, R.R. testified against J.A.M. R.R. was thirteen years old and had previously pleaded guilty to the same charge and testified against J.L. R.R. said that he and J.L. were walking around the trailer park on the evening of January 26. At approximately 8:00 or 9:00 p.m., they ended up near the swimming pool and saw a gray and white cat. R.R. and J.L. had petted the cat earlier. R.R. approached and picked up the cat; it scratched him. R.R. became angry and called the cat "stupid," then handed it to J.L. who wrapped it in his jacket. The two were walking with the cat and laughing when they encountered J.A.M. and handed the cat to him. J.L. asked J.A.M. if he wanted to throw the cat in the pool, and J.A.M. answered affirmatively. All three boys were laughing at that point.

R.R. testified that J.A.M. threw the cat into the pool. It quickly got out, but J.A.M. caught it and threw it back into the pool. The cat was submerged and tried to get out of the pool but could not because the boys pushed it backed with their hands and feet. Each boy pushed the cat back

3

into the water; R.R. and J.L. each pushed it four or five times. The cat attempted to swim across the pool, but the boys ran to the other side and continued pushing the cat into the pool to prevent its escape. The cat swam across the pool three or four times attempting to escape. R.R. admitted that they threw the cat in the pool because it had scratched him. When the cat was in the pool, R.R. said, "We was just playing." He also admitted that the cat looked like it was in pain when it was in the pool.

At some point the cat was able to reach the side of the pool and J.A.M. said, "That's enough messing with the cat." They watched the cat finally crawl out of the pool with its front paws after it rested on the side of the pool; it was exhausted and "wet and it was breathing hard." The cat limped to the gate of the pool area. The boys never attempted to help the cat. R.R. denied that he ever held the cat's head underwater. R.R. testified that later that night he looked for the cat to check on it. He said he saw the cat "playing." He testified that later that night, he saw the cat "over by the wall" surrounding the swimming pool. The cat was dead.

## DISCUSSION

### *Corroboration of Accomplice Testimony*

In order to support a conviction, the testimony of an accomplice must be corroborated by "other evidence tending to connect the defendant with the offense committed; the corroboration is not sufficient if it merely shows the commission of the offense." Tex. Code Crim. P. Ann. art. 38.14 (West 1979). This provision is intended to ameliorate the danger that self-interest might motivate an accomplice to falsely implicate others in his crime. *See Bingham v. State*, 913 S.W.2d 208, 211 (Tex. Crim. App. 1995).

4

An accomplice is one that can be prosecuted for the same offense charged. *See Creel v. State*, 754 S.W.2d 205, 213 (Tex. Crim. App. 1988). The test for determining the sufficiency of corroboration testimony is to eliminate from consideration the accomplice's testimony and decide whether the remaining evidence tends to connect the defendant to the commission of the offense. *See Reed v. State*, 744 S.W.2d 112, 125 (Tex. Crim. App. 1988); *Cantelon v. State*, 85 S.W.3d 457, 461 (Tex. App.—Austin 2002, no pet.). The corroborating link need not be direct or sufficient to itself establish guilt. *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999); *Barnes v. State*, 62 S.W.3d 288, 300-01 (Tex. App.—Austin 2001, pet. ref'd). The corroboration may consist of direct or circumstantial evidence. *Gosch v. State*, 829 S.W.2d 775, 777 (Tex. Crim. App. 1991); *Reed*, 744 S.W.2d at 126. The tends-to-connect standard is not a high threshold. *Cantelon*, 85 S.W.3d at 461.

We hold that Sadee's testimony connected appellant to the offense charged sufficiently to satisfy the corroboration requirement of article 38.14. Sadee testified that when her cat was found dead, it was wet. A day or so afterward, she observed appellant and his two friends discussing a cat, and heard J.L. describe the cat. The boys were gesturing or acting out how they drowned the cat. Appellant was laughing, nodding his head and approving of the tale being told. While Sadee admitted that she did not hear the boys' entire conversation, she affirmatively testified that they were discussing "a cat," and that J.L. described the cat.[2] This testimony is sufficient to connect appellant to this offense and to corroborate R.R.'s testimony.

---

[2] The hearsay objection, sustained by the court, prevented Sadee from repeating J.L.'s description of the cat.

Although he does not assign it as error, appellant complains that the trial court abused its discretion in admitting Sadee's interpretation of J.L.'s gestures in the cafeteria. He argues that her interpretation that J.L. was describing how the boys drowned a cat was merely speculation on her part about which she had no personal knowledge.

Texas Rule of Evidence 701 allows the admission of lay opinion testimony if it is reasonable and based on first-hand experiences. Tex. R. Evid. 701. A witness may give opinion testimony if the opinions or inferences are (1) rationally based on his or her perceptions, and (2) helpful to the clear understanding of the testimony or the determination of an issue of fact. *Osbourn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002); *Fairow v. State*, 943 S.W.2d 895, 898 (Tex. Crim. App. 1997). A witness's perceptions include one's interpretation of information acquired through one's own senses or experiences at the time of the event, "(i.e., things the witness saw, heard, smelled, touched, felt or tasted)." *Osbourn*, 92 S.W.3d at 535. Thus, under Rule 701 the "witness's testimony can include opinions, beliefs, or inferences as long as they are drawn from his or her own experiences or observations." *Id.*

The record shows that Sadee's testimony was not just her speculation about some isolated hand gestures. In the context of the record, it is obvious that Sadee, although inarticulate, based her testimony on her own sensory perceptions of the boys' verbal and non-verbal assertive acts. She demonstrated the gestures and she clearly stated that she heard the boys discussing a cat. Some of the pertinent parts of Sadee's testimony were:

A: "They kept on saying cat."

\* \* \* \*

6

Q: . . . what was [J.L.] doing?

A: Like he wasn't throwing his hand up in the air. He was just showing how he was dunking it down. I think he was trying to show how he was dunking it underwater.

Q: Dunking what under the water?

A: The cat.

\* \* \* \*

Q: Did they ever indicate what color that cat was?

A: They said that it was—

MR. FREED: Objection . . .

Q: Who was describing the cat?

A: [J.L.] was describing it.

Sadee was present in the cafeteria as the boys were telling their story and her testimony was based on her own senses of sight and sound. Based on the context of the record, we believe that her interpretation of her perceptions was reasonable. We hold that her testimony was admissible under Rule 701. *See, e.g.*, *Turro v. State*, 950 S.W.2d 390, 403 (Tex. App.—Fort Worth 1997, pet. ref'd) (upholding admission testimony of lay witness, who overheard telephone conversation, about emotional undercurrents involved in telephone conversation between two others).

*Evidentiary Standard of Review*

Appellant challenges the sufficiency of the evidence to support the conviction. His brief does not clearly specify whether he complains of the legal or factual sufficiency of the

7

evidence. We will review the case under both standards. In reviewing the legal sufficiency of the evidence, we consider all the evidence in a light most favorable to the judgment and determine whether a rational trier of fact could have found all the elements of the offense beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)); *Barnes*, 62 S.W.3d at 291.

When reviewing the factual sufficiency of the evidence, we view all the evidence in a neutral light favoring neither party, comparing the evidence that tends to support the conviction with that which is contrary to or undermines it. *Barnes*, 62 S.W.3d at 299. The appellate court must show deference to the fact finder's determinations about the weight and credibility of the evidence. *See Johnson*, 23 S.W.3d at 7. The State has the burden of proof, and the evidence of guilt is insufficient if it is so weak as to be clearly wrong and manifestly unjust. *Id.* Additionally, a conviction cannot stand if the defendant has the burden of proof or musters such contrary evidence and the adverse finding is against the great weight and preponderance of the available evidence. *Id.*

### Sufficient Evidence of "Torture"

Appellant specifically contends that the State failed to sufficiently prove that the cat was tortured. The essential elements of the offense of cruelty to animals by torture under section 42.09(a)(1) of the penal code are: (*i*) a person; (*ii*) acting intentionally or knowingly; (*iii*) tortures an animal. Tex. Pen. Code Ann. § 42.09(a)(1) (West 2003). The penal code does not define the term "torture." However, that term has been interpreted by courts under an earlier version of the animal cruelty statute. *See Barnett v. State*, 35 S.W.2d 441, 443 (Tex. Crim. App. 1931) ("The word 'torture' . . . is held to include every act or omission whereby unnecessary or unjustifiable pain or

8

suffering is caused to an animal."). We believe appellant's conduct clearly comes within the definition of torture of an animal. As the trial court aptly put it:

> there is no broken bone in this, there is no burn but, you know, there is not really any crueler way to go than to drown. You know, the fact that the skin wasn't broken did not mean that the cat wasn't injured, and the horror of trying to save yourself from drowning I think is torture.

Throwing an animal, known to have a natural aversion to water, into a swimming pool and preventing its escape as it struggles to breathe, stay afloat, and flee, then keeping the animal trapped in the pool as it grows more and more exhausted, is cruel by any reasonable standard. Moreover, there is direct, undisputed evidence that the cat looked as though it was experiencing pain during the boys' attack. Appellant's points are overruled.

## CONCLUSION

The judgment of the trial court is affirmed. *See* Tex. Fam. Code Ann. § 56.01(i) (West 2002).

_____

David Puryear, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed:   October 9, 2003

9