TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00610-CV







In the Matter of J. A. M.








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. J-19,778, HONORABLE W. JEANNE MUERER, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N




 This is an appeal from a judgment of delinquency. Appellant, at fifteen years old, was
found to have engaged in the delinquent conduct of cruelty to an animal by torture. See Tex. Fam.
Code Ann. § 51.03 (West 2002); Tex. Pen. Code Ann. § 42.09(a)(1) (West 2003). Appellant
allegedly threw a cat into a swimming pool, then prevented the cat from escaping by pushing it
underwater and away from the side of the pool with his foot. Appellant waived his right to a jury. 
After the court found him guilty, appellant was placed on probation for nine months in the custody
of his aunt and uncle. He appeals complaining by two grounds of error that (1) the accomplice's
testimony was uncorroborated, and (2) the evidence was insufficient to establish the requisite
element of torture beyond a reasonable doubt. Because we conclude that the accomplice witness was
adequately corroborated and the evidence showing torture was sufficient, we will affirm the
judgment.


FACTUAL BACKGROUND


 Sadee McIver owned a gray and white cat which she had raised from a small kitten. 
At the time of trial, Sadee was twelve and in the seventh grade attending Dessau Middle School. On
January 27, 2002, her cat was found dead in the Boulder Ridge Trailer Park near a swimming pool. 
Her father placed her cat in a bag and buried it in their backyard. Sadee testified that when it was
found her cat's underside was wet, but there were no other indications of how the cat died.

 Sadee was familiar with appellant, J.A.M., who attended the same school and rode
the same bus as Sadee. She was familiar with R.R. and J.L. who were also students at Dessau and
appellant's friends. Shortly after her cat was found dead, Sadee was in the school cafeteria before
school started. One of her friends told her something (1) about her cat; Sadee moved closer to observe
a group of boys. She said the boys were all talking at one time and were using hand gestures. She
testified that, "They were like throwing up in the air, stuff like that. . . . They were just doing it -
how they were - I don't know how to describe it, how they were doing it." She was asked to specify:
"How they were doing what?" And she answered, "Drowning the cat." She testified that it was
mostly J.L. who was using the hand gestures, and R.R. and J.A.M., "[t]hey were doing a little bit of
them."

 She said that J.L. was throwing his hands up in the air and "showing how he was
dunking it down . . . trying to show how he was dunking it underwater." She described the boys as
excited, smiling, and laughing. She also testified that "[t]hey kept on saying 'cat,'" and J.L.
described the cat. As for J.A.M. specifically, Sadee testified that while J.L. was describing how they
dunked the cat, J.A.M. was listening, smiling, and nodding his head up and down in agreement. 
Sadee did not hear J.A.M. implicate himself, but she saw him participate in and nod affirmatively
about a conversation punctuated by J.L.'s hand signals that seemed to her to refer to the tossing and
drowning of a cat.

 Sadee said she had a hunch that the boys were talking about her cat. She admitted
that at the time the cafeteria was full of students and she could not hear all that the boys said. She
did not confront the boys, but instead told Officer Kinnard, the police officer assigned to the school,
of the offense and her observations. 

 In addition to Sadee, R.R. testified against J.A.M. R.R. was thirteen years old and
had previously pleaded guilty to the same charge and testified against J.L. R.R. said that he and J.L.
were walking around the trailer park on the evening of January 26. At approximately 8:00 or 9:00
p.m., they ended up near the swimming pool and saw a gray and white cat. R.R. and J.L. had petted
the cat earlier. R.R. approached and picked up the cat; it scratched him. R.R. became angry and
called the cat "stupid," then handed it to J.L. who wrapped it in his jacket. The two were walking
with the cat and laughing when they encountered J.A.M. and handed the cat to him. J.L. asked 
J.A.M. if he wanted to throw the cat in the pool, and J.A.M. answered affirmatively. All three boys
were laughing at that point.

 R.R. testified that J.A.M. threw the cat into the pool. It quickly got out, but J.A.M.
caught it and threw it back into the pool. The cat was submerged and tried to get out of the pool but
could not because the boys pushed it backed with their hands and feet. Each boy pushed the cat back
into the water; R.R. and J.L. each pushed it four or five times. The cat attempted to swim across the
pool, but the boys ran to the other side and continued pushing the cat into the pool to prevent its
escape. The cat swam across the pool three or four times attempting to escape. R.R. admitted that
they threw the cat in the pool because it had scratched him. When the cat was in the pool, R.R. said,
"We was just playing." He also admitted that the cat looked like it was in pain when it was in the
pool.

 At some point the cat was able to reach the side of the pool and J.A.M. said, "That's
enough messing with the cat." They watched the cat finally crawl out of the pool with its front paws
after it rested on the side of the pool; it was exhausted and "wet and it was breathing hard." The cat
limped to the gate of the pool area. The boys never attempted to help the cat. R.R. denied that he
ever held the cat's head underwater. R.R. testified that later that night he looked for the cat to check 
on it. He said he saw the cat "playing." He testified that later that night, he saw the cat "over by the
wall" surrounding the swimming pool. The cat was dead.


DISCUSSION


Corroboration of Accomplice Testimony

 In order to support a conviction, the testimony of an accomplice must be corroborated
by "other evidence tending to connect the defendant with the offense committed; the corroboration
is not sufficient if it merely shows the commission of the offense." Tex. Code Crim. P. Ann. art.
38.14 (West 1979). This provision is intended to ameliorate the danger that self-interest might
motivate an accomplice to falsely implicate others in his crime. See Bingham v. State, 913 S.W.2d
208, 211 (Tex. Crim. App. 1995).

 An accomplice is one that can be prosecuted for the same offense charged. See Creel
v. State, 754 S.W.2d 205, 213 (Tex. Crim. App. 1988). The test for determining the sufficiency of
corroboration testimony is to eliminate from consideration the accomplice's testimony and decide
whether the remaining evidence tends to connect the defendant to the commission of the offense. 
See Reed v. State, 744 S.W.2d 112, 125 (Tex. Crim. App. 1988); Cantelon v. State, 85 S.W.3d 457,
461 (Tex. App.--Austin 2002, no pet.). The corroborating link need not be direct or sufficient to
itself establish guilt. Cathey v. State, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999); Barnes v. State,
62 S.W.3d 288, 300-01 (Tex. App.--Austin 2001, pet. ref'd). The corroboration may consist of
direct or circumstantial evidence. Gosch v. State, 829 S.W.2d 775, 777 (Tex. Crim. App. 1991);
Reed, 744 S.W.2d at 126. The tends-to-connect standard is not a high threshold. Cantelon, 85
S.W.3d at 461.

 We hold that Sadee's testimony connected appellant to the offense charged
sufficiently to satisfy the corroboration requirement of article 38.14. Sadee testified that when her
cat was found dead, it was wet. A day or so afterward, she observed appellant and his two friends
discussing a cat, and heard J.L. describe the cat. The boys were gesturing or acting out how they
drowned the cat. Appellant was laughing, nodding his head and approving of the tale being told. 
While Sadee admitted that she did not hear the boys' entire conversation, she affirmatively testified
that they were discussing "a cat," and that J.L. described the cat. (2) This testimony is sufficient to
connect appellant to this offense and to corroborate R.R.'s testimony.

 Although he does not assign it as error, appellant complains that the trial court abused
its discretion in admitting Sadee's interpretation of J.L.'s gestures in the cafeteria. He argues that
her interpretation that J.L. was describing how the boys drowned a cat was merely speculation on
her part about which she had no personal knowledge.

 Texas Rule of Evidence 701 allows the admission of lay opinion testimony if it is
reasonable and based on first-hand experiences. Tex. R. Evid. 701. A witness may give opinion
testimony if the opinions or inferences are (1) rationally based on his or her perceptions, and (2)
helpful to the clear understanding of the testimony or the determination of an issue of fact. Osbourn
v. State, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002); Fairow v. State, 943 S.W.2d 895, 898 (Tex.
Crim. App. 1997). A witness's perceptions include one's interpretation of information acquired
through one's own senses or experiences at the time of the event, "(i.e., things the witness saw,
heard, smelled, touched, felt or tasted)." Osbourn, 92 S.W.3d at 535. Thus, under Rule 701 the
"witness's testimony can include opinions, beliefs, or inferences as long as they are drawn from his
or her own experiences or observations." Id. 

 The record shows that Sadee's testimony was not just her speculation about some
isolated hand gestures. In the context of the record, it is obvious that Sadee, although inarticulate, 
based her testimony on her own sensory perceptions of the boys' verbal and non-verbal assertive
acts. She demonstrated the gestures and she clearly stated that she heard the boys discussing a cat.

Some of the pertinent parts of Sadee's testimony were:


A: "They kept on saying cat."


 * * * *

Q: . . . what was [J.L.] doing?


A: Like he wasn't throwing his hand up in the air. He was just showing how
he was dunking it down. I think he was trying to show how he was dunking
it underwater.


Q: Dunking what under the water?


A: The cat.


 * * * *


Q: Did they ever indicate what color that cat was?


A: They said that it was--


 MR. FREED: Objection . . .


Q: Who was describing the cat?


A: [J.L.] was describing it.



Sadee was present in the cafeteria as the boys were telling their story and her testimony was based
on her own senses of sight and sound. Based on the context of the record, we believe that her
interpretation of her perceptions was reasonable. We hold that her testimony was admissible under
Rule 701. See, e.g., Turro v. State, 950 S.W.2d 390, 403 (Tex. App.--Fort Worth 1997, pet. ref'd)
(upholding admission testimony of lay witness, who overheard telephone conversation, about 
emotional undercurrents involved in telephone conversation between two others).


Evidentiary Standard of Review

 Appellant challenges the sufficiency of the evidence to support the conviction. His
brief does not clearly specify whether he complains of the legal or factual sufficiency of the
evidence. We will review the case under both standards. In reviewing the legal sufficiency of the
evidence, we consider all the evidence in a light most favorable to the judgment and determine
whether a rational trier of fact could have found all the elements of the offense beyond a reasonable
doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000) (citing Jackson v. Virginia, 443
U.S. 307, 318-19 (1979)); Barnes, 62 S.W.3d at 291. 

 When reviewing the factual sufficiency of the evidence, we view all the evidence in
a neutral light favoring neither party, comparing the evidence that tends to support the conviction
with that which is contrary to or undermines it. Barnes, 62 S.W.3d at 299. The appellate court must
show deference to the fact finder's determinations about the weight and credibility of the evidence. 
See Johnson, 23 S.W.3d at 7. The State has the burden of proof, and the evidence of guilt is
insufficient if it is so weak as to be clearly wrong and manifestly unjust. Id. Additionally, a
conviction cannot stand if the defendant has the burden of proof or musters such contrary evidence
and the adverse finding is against the great weight and preponderance of the available evidence. Id. 


Sufficient Evidence of "Torture"

 Appellant specifically contends that the State failed to sufficiently prove that the cat
was tortured. The essential elements of the offense of cruelty to animals by torture under section
42.09(a)(1) of the penal code are: (i) a person; (ii) acting intentionally or knowingly; (iii) tortures an
animal. Tex. Pen. Code Ann. § 42.09(a)(1) (West 2003). The penal code does not define the term
"torture." However, that term has been interpreted by courts under an earlier version of the animal
cruelty statute. See Barnett v. State, 35 S.W.2d 441, 443 (Tex. Crim. App. 1931) ("The word
'torture' . . . is held to include every act or omission whereby unnecessary or unjustifiable pain or
suffering is caused to an animal."). We believe appellant's conduct clearly comes within the
definition of torture of an animal. As the trial court aptly put it:


there is no broken bone in this, there is no burn but, you know, there is not really any
crueler way to go than to drown. You know, the fact that the skin wasn't broken did
not mean that the cat wasn't injured, and the horror of trying to save yourself from
drowning I think is torture.



Throwing an animal, known to have a natural aversion to water, into a swimming pool and
preventing its escape as it struggles to breathe, stay afloat, and flee, then keeping the animal trapped
in the pool as it grows more and more exhausted, is cruel by any reasonable standard. Moreover,
there is direct, undisputed evidence that the cat looked as though it was experiencing pain during the
boys' attack. Appellant's points are overruled.


CONCLUSION


 The judgment of the trial court is affirmed. See Tex. Fam. Code Ann. § 56.01(i)
(West 2002).



 

 David Puryear, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear 

Affirmed

Filed: October 9, 2003
1. Sadee testified that a friend told her that a group of boys there in the cafeteria was
describing how they had drowned a cat similar to Sadee's. The court sustained a hearsay objection,
and allowed Sadee to state only that a friend told her something and she moved closer to observe the
boys.
2. The hearsay objection, sustained by the court, prevented Sadee from repeating J.L.'s
description of the cat.