NO. 12-03-00163-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
ROBERT EARL MAYS,                                    §                 APPEAL FROM THE 7TH
APPELLANT
 
V.                                                                         §                 JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §                 SMITH COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Appellant Robert Earl Mays was convicted of manufacturing a controlled substance,
methamphetamine, in an amount of more than four grams but less than two hundred grams. The jury
found him guilty as charged in the indictment. The trial court sentenced Appellant to twenty years
of imprisonment and ordered him to pay restitution in the amount of $4,536.50. Appellant raises two
issues on appeal. We affirm.
 
Background
            Appellant was indicted for manufacturing methamphetamine in an amount of more than four
grams but less than two hundred grams. The matter proceeded to a jury trial, at which the State
introduced testimony from the three officers who arrested Appellant.
            According to the officers, they went to a rural Smith County mobile home in the late evening
of May 11, 2001 in response to a disturbance/suspicious persons call. As they arrived, they met a
man with whom they were familiar, Joseph Abohosh. They spoke to Abohosh as he left the
premises. Abohosh told the officers he had rented the mobile home, and they later learned Appellant
was Abohosh’s employee.  
            Continuing their investigation of the complaint, the officers knocked on the door of the
mobile home. Appellant opened the door, and the officers noticed that he was lethargic as if he had
awakened from a deep sleep and appeared to be disoriented. The officers could not see anything
because the mobile home was very dark, but they smelled ether and ammonia. The smell was one
commonly encountered where methamphetamine was being manufactured. One of the officers
requested permission to enter the mobile home, and Appellant told the officer to “[c]ome on in.” 
Once inside, the officers had to use their flashlights because there was no electricity supplied to the
mobile home. Subsequently, they determined that the mobile home also had no water service. The
officers saw nothing to indicate that anyone actually lived in the mobile home.
            The three officers entered the mobile home through the living area and shined their
flashlights for officer safety. In clear view on a bar in the living area, the officers saw a large plastic
bag containing what they perceived to be methamphetamine. Also in clear view was a bug sprayer,
commonly called a generator, that is used to pump up pressure during the manufacture of
methamphetamine. A bottle of sulphuric acid and some rock salt, also used in methamphetamine
manufacturing, were on the floor by the bar. One of the officers walked to the back of the mobile
home, shined his flashlight for safety purposes, and discovered two other people. At that point, the
officers concluded that methamphetamine was being manufactured and called the Drug Enforcement
Administration (DEA). Two DEA officers arrived in response and notified the DPS crime lab. Lab
technicians were dispatched to the scene to inventory the items in the mobile home.
            The search of the mobile home and the outside area continued for almost twelve hours. 
During the search, the officers found items such as the following, all of which are commonly
associated with the manufacture of methamphetamine: (1) several one-gallon jars containing a
product or a by-product of the methamphetamine manufacturing process; (2) five small flashlight
batteries on a table, significant because lithium is taken from batteries to be used in the manufacture
of methamphetamine; (3) the bug sprayer that could be used as a generator; (4) rock salt and
sulphuric acid; (5) a two-thousand-gallon tank of anhydrous ammonia; (6) numerous empty
containers in the trash, such as blister packs in which ephedrine and pseudoephedrine tablets are
contained, and starting fluid cans; (7) a liquid and cotton balls used in the finishing process of
manufacturing methamphetamine; (8) rubber gloves and glass jars; (9) charcoal lighter, alcohol,
Coleman fluid, funnels, coffee filters, and paper towels; (10) a jug containing red phosphorus
residue; and (11) over 120 grams of pseudoephedrine as well as over 22 grams of methamphetamine. 
Two of the one-gallon jars contained clear liquid from which smoke, or a light fog was rising, and
the odor coming from that vapor was an ether smell. 
            The DPS chemist testified that the vapor was perhaps the anhydrous ammonia still
evaporating from the methamphetamine. Because the ammonia evaporates within minutes, the
chemist stated that the presence of vapor indicated the manufacturing process had been progressing
just minutes before the police arrived. Due to the presence of volatile gases, the officers removed
Appellant and another person


 from the mobile home. They then called the fire department to come
to the scene and use large fans to vent the vapors in the mobile home.
            Appellant admitted to the officers that he had assisted in unloading the equipment used in
the methamphetamine lab and that he had assisted in stealing two anhydrous ammonia tanks, one
of which they had transported to another county. However, the officers believed that Appellant was
trying to make it clear that the lab belonged to Abohosh.
            At the conclusion of the guilt-innocence phase, the case was submitted to the jury. The jury
charge included a charge on the law of parties. The jury found Appellant guilty as charged. The trial
court sentenced Appellant to twenty years of imprisonment and ordered him to pay restitution in the
amount of $4,536.50. 
 
Sufficiency of The Evidence
            In his first issue, Appellant contends that the trial court erred in rendering judgment on the
jury’s verdict because there was no credible evidence that Appellant manufactured a controlled
substance. In his second issue, he argues that the trial court erred in rendering judgment on the jury’s
verdict because the evidence was so contrary to the jury’s verdict as to be clearly wrong and unjust. 
These arguments challenge the legal and factual sufficiency of the evidence to support Appellant’s
conviction. Appellant briefed the issues together.
 
The Offense and the Law of Parties
            Except as authorized by Chapter 481 of the Texas Health and Safety Code, a person commits
an offense if he knowingly manufactures, delivers, or possesses with intent to manufacture or deliver
a controlled substance listed in Penalty Group 1. Tex. Pen. Code Ann. § 481.112 (a) (Vernon 2003).
Methamphetamine is a controlled substance listed in Penalty Group 1. Tex. Pen. Code Ann.
§ 481.102(6) (Vernon Supp. 2004).
            In the instant case, the jury was charged on the law of parties. A person is criminally
responsible as a party to an offense if the offense is committed by his own conduct, by the conduct
of another for which he is criminally responsible, or by both. Tex. Pen. Code Ann. § 7.01(a)
(Vernon 2003). A person is criminally responsible for an offense committed by the conduct of
another if, acting with intent to promote or assist the commission of the offense, he solicits,
encourages, directs, aids, or attempts to aid the other person to commit the offense. Tex. Pen. Code
Ann. § 7.02(a)(2) (Vernon 2003). 
            Mere presence at the scene of a crime is not alone sufficient to prove that a person is a party
to an offense, although it is a circumstance tending to prove guilt which, combined with other facts,
may suffice to show that the accused was a participant. Beardsley v. State, 738 S.W.2d 681, 685
(Tex. Crim. App. 1987); Barnes v. State, 62 S.W.3d 288, 297 (Tex. App.–Austin 2001, pet. ref’d). 
In determining whether a defendant participated in an offense as a party, the court may examine the
events occurring before, during, and after the commission of the offense and may rely on actions of
the defendant that show an understanding and common design to commit the offense. Random v.
State, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994). Intent may be inferred from circumstantial
evidence such as the acts, words, and conduct of the accused. Patrick v. State, 906 S.W.2d 481, 487
(Tex. Crim. App. 1995). 
Legal Sufficiency
            In reviewing a legal sufficiency question, we must view the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct.
2781, 2789, 61 L. Ed. 2d 560 (1979); King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). 
The trier of fact, here the jury, is the exclusive judge of the credibility of witnesses and of the weight
to be given their testimony. Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). The jury
is entitled to draw reasonable inferences from the evidence. Benavides v. State, 763 S.W.2d 587,
588-89 (Tex. App.–Corpus Christi 1988, pet. ref’d). Likewise, reconciliation of conflicts in the
evidence is within the exclusive province of the jury. Losada v. State, 721 S.W.2d 305, 309 (Tex.
Crim. App. 1986). 
            Viewed in the light most favorable to the verdict, the evidence here shows that the officers
(1) entered the mobile home after Appellant consented to their entry, showing that Appellant had
some degree of custody and control over the mobile home; (2) saw methamphetamine and smelled
strong odors consistent with the manufacture of methamphetamine; (3) found a number of items used
to manufacture methamphetamine; (4) believed that the still-smoking gallon jars indicated that the
lab had been recently in operation; and (5) believed that no one actually lived in the mobile home. 
This evidence is legally sufficient to support Appellant’s conviction.
            Moreover, Appellant admitted to the officers that he had assisted in unloading the equipment
used in the methamphetamine lab and that he had assisted in stealing two anhydrous ammonia tanks,
one of which they had transported to another county. This additional evidence is legally sufficient
to show that Appellant acted as a party. See East v. State, 722 S.W.2d 170, 171-72 (Tex. App.–Fort
Worth 1986, pet. ref’d) (evidence legally sufficient to support conviction for manufacturing
amphetamine where two defendants were present in a mobile home that contained a drug lab;
defendants had custody and control of the mobile home; amphetamine was found in containers of the
bedroom of the home; the lab had been used by a third person to manufacture amphetamine; and odor
associated with the manufacture of drugs was present at the time of the defendants’ arrests). 
Appellant’s first issue is overruled.
Factual Sufficiency
            When reviewing the factual sufficiency of the evidence, we review all of the evidence, but
not in the light most favorable to the prosecution. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997). We must determine whether a neutral review of the evidence, both for and against the
finding, demonstrates that a rational jury could find guilt beyond a reasonable doubt. Zuniga v.
State, No. 539-02, 2004 WL 840786, at *7 (Tex. Crim. App. Apr. 21, 2004). Evidence is factually
insufficient when evidence supporting the verdict, considered by itself, is too weak to support the
finding of guilty beyond a reasonable doubt. Id. Evidence is also factually insufficient when
contrary evidence is so strong that the beyond-a-reasonable-doubt burden of proof could not have
been met. Id. The jury is the sole judge of the weight and credibility of witness testimony. 
Wesbrook v. State, 29 S.W.3d 103, 112 (Tex. Crim. App. 2000).
            According to the record, the defense offered no evidence to contradict any of the State’s
witnesses. For this reason, and in light of the State's evidence discussed above, we disagree that the
evidence supporting the verdict, when considered by itself, is too weak to support the jury’s finding
of guilt or that the contrary is so strong that the State could not have met its burden of proof. See
Zuniga, 2004 WL 840786, at *7; see also Pegues v. State, No. 14-99-00378-CR, 2000 WL 1028968,
at *3 (Tex. App.–Houston [14th Dist.] July 27, 2000, pet. ref’d) (not designated for publication)
(since evidence was legally sufficient, evidence was also factually sufficient where defense offered
no evidence to contradict the testimony of the State’s witnesses) (citing Clewis v. State, 922 S.W.2d
126, 129 (Tex. Crim. App. 1996)). Therefore, we hold that the evidence was factually sufficient for
the jury to find Appellant guilty as charged. Appellant’s second issue is overruled.
 
Conclusion
            Having overruled Appellant’s first and second issues, we hold that the trial court did not err
in rendering judgment based on the jury’s verdict. The judgment of the trial court is affirmed.
 
 
 
                                                                                                    SAM GRIFFITH 
                                                                                                               Justice
 
 
Opinion delivered November 24, 2004.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.
 
 
(DO NOT PUBLISH)