# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00577-CR

**Leo May, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT OF MILAM COUNTY
### NO. CR27844, HONORABLE FRANK SUMMERS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Leo May of assault on a family member, and the trial court assessed his punishment at 90 days in the county jail. *See* Tex. Penal Code Ann. § 22.01 (West Supp. 2006). In two points of error, appellant contends that the evidence is legally and factually insufficient to sustain his conviction. We affirm the trial court's judgment.

On April 21, 2005, Ken Freeman, appellant's first cousin, called the police to report a fight between appellant and appellant's girlfriend, Shamera Holmes. Freeman testified about the events he witnessed that night and stated that he gave the police a oral statement, but that the written statement prepared by the police was not accurate. Freeman testified that the police officer who wrote down the statement "put in his own terms" and "put in his own words that he wished," although Freeman admitted that he read and signed the statement the night of the incident. Freeman

also said, "I was wasted that night. I really was wasted. But I do remember the situation to a degree as to what happened."

Freeman testified that shortly before 9:00 p.m. on April 21, he and appellant drove from Freeman's house to appellant's house, where Holmes was sitting on the porch. Holmes asked appellant to drive her to check on her children, but he refused because he "didn't have the gas." Freeman testified that angry words were exchanged between appellant and Holmes, and that he tried "to keep it from escalating and getting out of hand," talking Holmes into walking to her mother's nearby home. Freeman and Holmes began walking away, and appellant followed, continuing to argue with Holmes, but Freeman said, "I was—just as long as they're not hitting each other or nothing like that, that was fine with me." Freeman testified that Holmes got tired of arguing with appellant and abruptly started running away, but she tripped and fell, and appellant walked over and laughed at her. Freeman testified that he "knew then that that situation was fixing to get out of control," so he ran across the railroad tracks and called 911 and "tried to get them over there as quick as" they could. Freeman remembered making the 911 call and admitted that he told the police that appellant was "beating up his girlfriend" and that they should send "two or three units" from "both ways, front and back" because appellant would "try and run." However, he denied seeing appellant push or drag Holmes, saying he could not have seen such events because he was across the tracks, waiting for the police. Freeman admitted that he "may have said" appellant was "in a dope-fiend rage," but said that he "said a lot of things [he] can't remember" and that the police told him he was "preaching to them" and "babbling" about having seen the devil.

Shortly after the incident, at about 9:30 p.m., Freeman gave an oral statement, and a police officer transcribed it for Freeman's review and signature. According to the statement, Freeman said that appellant threw Holmes to the ground and was "acting crazy." The statement recites that appellant threw Holmes around by her hair and her shirt and dragged her behind a house. At trial, however, Freeman denied seeing appellant throw Holmes down and said that although he read and signed the statement, it was not true. Freeman testified that he told the police that Holmes fell while she was running, but that the officer "put it in his own words as they always do." He said he signed the statement because he was intoxicated and wanted to leave the police station.

Freeman was called back to the stand for rebuttal and was asked whether he "made a statement—a written statement to the police that [appellant] had thrown Ms. Holmes to the ground by her hair." Freeman responded, "As far as I remember, yes, sir." Freeman was then asked whether that statement was true or false, and he said he could not remember because he had been drinking all day and was intoxicated, but he did not "believe" that his statement was true. Freeman was asked whether he saw appellant throw Holmes to the ground by her hair, and he said, "No," and "I can't remember, I can't remember him throwing her to the ground or anything like that."

Officer Mark Nowell was the first officer to arrive on the scene and testified that when he arrived, the first thing he saw was appellant pulling Holmes by her shirt. Nowell testified that he recognized appellant and Holmes because he had "dealt with them in the past on numerous occasions." Appellant was "sweaty, disheveled, obviously upset," and Holmes's shirt was "torn and pulled" and on inside-out and backwards. He testified that she also had gravel and dust in her hair and scrape marks on her elbow and arm. When Nowell asked Holmes for an explanation, she first said nothing had happened, so Nowell said, "Shamera, don't lie to me. I've done this too long. I

3

know you." Holmes then told Nowell that appellant had "thrown her down"; Nowell said, "All she admitted to me, sir, was that he had thrown her down." Nowell testified that he was the officer who took Freeman's statement at the police station and said he wrote down Freeman's "dictated" statement "word for word." Nowell testified that Freeman had a "slight alcoholic smell" and was "very agitated," but Nowell did not think Freeman was drunk.

Officer Jeff Hinojosa also responded to the 911 call and drove Holmes to the police station to give a statement. Hinojosa said Holmes was shaking and had grass on her clothes and in her hair. At the station, Hinojosa took down Holmes's statement, and he testified that Holmes did not say anything about having tripped and fallen over a log or tree stump. Holmes's statement was not introduced into evidence, and she did not testify at trial.

In two points of error, appellant claims that the evidence is legally and factually insufficient to prove that he threw Holmes to the ground by her hair or that he caused bodily injury or pain to Holmes, arguing that the State's evidence was entirely circumstantial and does not show beyond a reasonable doubt that he committed the charged offense. We disagree.

In reviewing the legal sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to the verdict and ask whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In reviewing the factual sufficiency of the evidence, we consider all the evidence equally, including testimony by defensive witnesses and evidence supporting alternative hypotheses. *See Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). Although we give due deference to the fact-finder's determinations,

4

particularly those involving the weight and credibility of the evidence, we may disagree with the result to prevent a manifest injustice. *Johnson*, 23 S.W.2d at 9; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Evidence is factually insufficient if the evidence supporting the verdict is so weak as to make the finding of guilt clearly wrong or manifestly unjust, or if the verdict is against the great weight and preponderance of the available evidence. *Watson v. State*, No. PD-469-05, 2006 Tex. Crim. App. LEXIS 2040, at *30-31 (Tex. Crim. App. Oct. 18, 2006); *Johnson*, 23 S.W.3d at 11. The standard is the same for direct and circumstantial evidence, and the State may prove its case solely through circumstantial evidence. *Barnes v. State*, 62 S.W.3d 288, 297 (Tex. App.—Austin 2001, pet. ref'd). The jury is the sole judge of the weight and credibility of witness testimony. *Id*. at 298. The fact-finder may accept or reject any or all of a witness's testimony, may draw reasonable inferences from the evidence, and must resolve evidentiary conflicts. *Id*.

Appellant was charged with intentionally, knowingly, or recklessly causing bodily injury to Holmes "by throwing her to the ground by her hair." Assault is defined as "intentionally, knowingly, or recklessly caus[ing] bodily injury to another." Tex. Penal Code Ann. § 22.01(a)(1). Bodily injury is defined as "physical pain, illness, or any impairment of physical condition," *id*. § 1.07(a)(8) (West Supp. 2006), and is proved if the evidence shows that the victim suffered "some" pain. *See Lane v. State*, 763 S.W.2d 785, 786-87 (Tex. Crim. App. 1989). The jury may infer that the victim suffered pain based on evidence of injuries or the circumstances of the assault. *See Goodin v. State*, 750 S.W.2d 857, 859 (Tex. App.—Corpus Christi 1988, pet. denied).

Officer Nowell further testified that when he arrived on the scene, he saw appellant pulling Holmes by her shirt, which was torn, stretched, and on inside-out and backwards. Although she initially said nothing had happened, Holmes eventually told Nowell that appellant had thrown

5

her to the ground.  Nowell and Hinojosa testified that Holmes had gravel, grass, and dust in her hair and clothes.  Nowell saw scratches on Holmes's arm, and Hinojosa testified that Holmes was shaking during her drive to the police station.  Nowell testified that he wrote down Freeman's oral statement "word for word," and Freeman admitted that the written statement says that he saw appellant dragging Holmes by her hair and shirt.  Freeman also admitted that in his 911 call, he said appellant was acting crazy and was beating Holmes.  The jury could have considered Freeman's close family relationship to appellant and concluded that Freeman's initial statements were truthful, rather than his recantation at trial.  Thus, the jury could have reasonably disregarded Freeman's testimony that he did not see appellant push or drag Holmes.  Instead, the jury reasonably could have believed that Freeman saw appellant throw Holmes to the ground by her hair and could have inferred from Holmes's shaken demeanor, her scratched arm, and disheveled appearance that she suffered some pain as a result of appellant's assault.  The evidence is both legally and factually sufficient to show that appellant intentionally, knowingly, or recklessly injured Holmes and caused her pain. *See* Tex. Penal Code Ann. §§ 1.07(a)(8), 22.01(a)(1).

_____

David Puryear, Justice

Before Justices B. A. Smith, Puryear and Waldrop

Affirmed

Filed:   December 5, 2006

Do Not Publish