

**NUMBER 13-09-284-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **CLAYTON FRY,** | **Appellant,** |

**v.**

| | |
|---|---|
| **THE STATE OF TEXAS,** | **Appellee.** |

**On appeal from the 130th District Court
of Matagorda County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Vela
Memorandum Opinion by Justice Vela**

A jury convicted appellant, Clayton Fry, of sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A) (Vernon Supp. 2009). After finding appellant had two prior sequential felony convictions, the jury assessed punishment under the habitual-felony-offender statute at fifty years' imprisonment. *See id*. § 12.42(d) (Vernon Supp. 2009). By

a single issue, appellant contends that the evidence is insufficient to establish that he intentionally or knowingly committed the offense of sexual assault of a child. We affirm.

## I. FACTUAL BACKGROUND

In June 2008, A.F.'s grandfather found out that one of A.F.'s friends was angry with her "for doing something." When he talked to A.F. about what had happened, he became aware that A.F. and appellant had "sexual contact." After talking to A.F., the grandfather contacted the Matagorda County Sheriff's Department, and Sergeant Charlotte Brown interviewed A.F. During the interview, A.F. "admit[ted] to sexual intercourse." Sergeant Brown testified that A.F. and appellant were never married to each other and that at the time of the sexual assault, A.F. was fourteen years old, and appellant was thirty-six years old.

Appellant was arrested and taken to the county jail, where Sergeant Brown interviewed him. Before she began to ask appellant about the sexual assault, she gave him the rights pursuant to article 38.22 of the Texas Code of Criminal Procedure.[1] He waived[2] these rights and provided her a written statement[3] in which he stated, in relevant part:

> I am telling Sgt. Brown the truth today about what happened between me and [A.F.]. First of all, it wasn't in June, it was in May 2008. I was at a party at Rob and Linda's house. Tiger White was there too. [A.F.] kept calling Tiger and asking if I was there. First thing I knew she showed up there. When she got there she asked if I could get her some powder. She already had some but she knew she would run out. Courtney Rawlings gets her stuff but Courtney wasn't there. I wasn't happy to see her show up because she has been chasing after me for awhile. I didn't ever have anything to do with her because she's 14 and I've know her family all my life. She is like family

---

[1]*See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a)(1)-(5) (Vernon 2005).

[2]The trial court admitted the written waiver into evidence as State's exhibit 1.

[3]The trial court admitted the written statement into evidence as State's exhibit 2.

2

to me. I drank a bottle of tequila that night by myself. I also had 10 or 12 beers and smoked some marihuana. Later that night, [A.F.] walked me to Cody Bowman's trailer where I would stay periodically. At that time I really didn't have no place to live. I was staying with my sister Gina or with Tiger or with Cody. [A.F.] held onto me and helped me walk there because I was pretty messed up. When we first got there, I told her how to cut [sic] the light and the air conditioner on. I was so sick I couldn't do it. I went into the bedroom and laid on the bed. I got up and went to the bathroom and threw up. Then I went back to bed. I heard [A.F.] in the living room snorting. I passed out in the bed. The next thing I knew I woke up because [A.F.] was in between my legs playing with my penis. My upper body was laying back on the bed and my feet were on the floor. [A.F.] had taken her clothes off and she had pushed my legs open and unzipped my pants. Then she had oral sex with me. She kept trying to get me aroused and she finally did. She climbed on top of me and then we had intercourse. I was erect and my penis was in her vagina but I never came. I was so messed up that I couldn't come. [A.F.] told Sgt. Brown that we used a condom but that is not true. I wouldn't have been physically able to put one on. I passed out again. When I woke up the next morning, [A.F.] was gone and I thought I must have just dreamed what happened the night before. I never intended to have sex with [A.F.]. It was not consensual on my part. . . .

Sergeant Brown testified that appellant told her that A.F. voluntarily performed oral sex on him and that she climbed on top of him and they had intercourse.

A.F. testified that in early June of 2008, she went to her friends' house to visit with one of her friends. When her friend did not show up, A.F. talked to the people who were there. She saw appellant at this house and testified that he was "drinking" but not "falling down drunk." She stated that she did not take any cocaine with her and that she did not go there looking for cocaine. At some point, appellant asked A.F. to go with him to P.'s house. A.F. knew P. and intended to go there with appellant to visit P. When they arrived at P.'s house, nobody was home. Appellant led A.F. into the house, and they sat on the couch and talked. Later, they went to the back bedroom, where appellant took off his clothes. A.F. testified that she helped him take off her clothes. They got on the bed, and appellant put his penis into her vagina. A.F. testified that appellant did not "pass out" while she was with him, and she stated that she did not "force" herself upon him or "straddle"

3

him. Afterwards, she got dressed and went home.

A.F.'s neighbor and friend, Courtney Rawlings, testified that she never tried to get powdered cocaine for A.F. Prior to appellant's arrest for the instant offense, Rawlings asked appellant, "'How could you sleep with [A.F.] [?]'" He replied, "'I'm not saying I did, and I'm not saying I didn't.'" In response, Rawlings told him, "'Okay. I already know that you did.'" In reply, he said, "'[I]t wasn't supposed to happen but she wanted it, too.'"

## II. DISCUSSION

By a single issue, appellant contends the evidence is insufficient to establish that he intentionally or knowingly committed the offense of sexual assault of a child.

### A. Legal Sufficiency

"When conducting a legal sufficiency review, a court must ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'–not whether '*it* believes that the evidence at trial established guilt beyond a reasonable doubt.'" *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)) (emphasis in original). "In doing so, we assess all of the evidence 'in the light most favorable to the prosecution.'" *Id*. (quoting *Jackson*, 443 U.S. at 319). "After giving proper deference to the fact finder's role, we will uphold the verdict unless a rational fact finder must have had reasonable doubt as to any essential element." *Id*. at 518.

### B. Applicable Law

Our review of a legal and factual sufficiency challenge should be examined under the principles of review for a hypothetically correct jury charge. *Grotti v. State*, 273 S.W.3d 273, 280-81 (Tex. Crim. App. 2008). "'Such a charge [is] one that accurately sets out the

law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof, or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

The indictment in this case alleged, in relevant part, that appellant: "did then and there, intentionally and knowingly cause[d] the penetration of the sexual organ of [A.F.], a child who was then and there younger than 17 years of age and not the spouse of the defendant, by defendant's sexual organ. . . ." In order to convict appellant of sexual assault of a child, the State was required to prove beyond a reasonable doubt that he intentionally or knowingly caused the penetration of the sexual organ of a child by any means. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A). A "child" is a person younger than seventeen years of age. *See id*. § 22.011(c)(1). The testimony of a child victim alone is sufficient to support a conviction for sexual assault of a child. TEX. CODE CRIM. PROC. ANN. art. 38.07(a) (Vernon 2005).

Section 6.03(b) of the code of criminal procedure provides:

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

TEX. PENAL CODE ANN. § 6.03(b) (Vernon 2003). "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." *Id*. § 6.03(a).

5

## C. Analysis

Evidence was presented at trial that A.F. was fourteen years old at the time of the sexual assault and that she had never been married to appellant. A.F. testified that while at P.'s house, she went with appellant to the back bedroom, where appellant put his penis into her vagina. She testified that appellant was "not falling down drunk" and that he did not pass out while she was with him at P.'s house. The testimony of A.F. alone is sufficient to support the finding of guilt. *See* Tex. Code Crim. Proc. Ann. art. 38.07.

We note that in appellant's written statement, he stated that he never intended to have sex with A.F. and that he did not consent to having sex with her. However, "[t]he jury is free to accept or reject any or all of the evidence presented by either party." *Barnes v. State*, 62 S.W.3d 288, 298 (Tex. App.–Austin 2001, pet. ref'd). Thus, the jury could have rejected appellant's written statement and accepted A.F.'s version of the events. Furthermore, his statements that he did not intend to have sex with A.F. and that he did not consent to having sex with her are contradicted by Rawlings' testimony. When Rawlings told appellant that she knew he had slept with A.F., he said, "'[I]t wasn't supposed to happen but she wanted it, too.'" A rational jury could interpret his response to mean that he knowingly and intentionally participated in the act of sexual intercourse with A.F.

Appellant contends he did not act intentionally or knowingly because, by reason of his intoxication, he could not have consented to penetrating A.F.'s sexual organ. However, there is no evidence in this record to show that appellant became intoxicated *involuntarily*. Voluntary intoxication is not a defense to the commission of a crime,[4] and evidence of an accused's intoxication "does not negate the elements of intent or knowledge." *Hawkins v*

---

† ex. Code Crim. Proc. Ann. art. 8.04(a) (Vernon 2003).

*State*, 605 S.W.2d 586, 589 (Tex. Crim. App. 1980). Viewing the evidence in the light most favorable to the verdict, we hold that the evidence is legally sufficient to support the conviction for sexual assault of a child beyond a reasonable doubt.

## D. Factual Sufficiency

In a factual-sufficiency review, the only question to be answered is: "Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Grotti*, 273 S.W.3d at 283. Evidence can be deemed factually insufficient in two ways: (1) "the evidence supporting the conviction is 'too weak' to support the fact finder's verdict;" or (2) "considering conflicting evidence, the fact finder's verdict is 'against the great weight and preponderance of the evidence.'" *Laster*, 275 S.W.3d at 518 (quoting *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006)). When a court of appeals conducts a factual-sufficiency review, it must defer to the jury's findings. *Id*. The court of criminal appeals has "set out three 'basic ground rules' implementing this standard." *Id*. (quoting *Watson*, 204 S.W.3d at 414). First, the appellate court must consider all of the evidence in a neutral light, as opposed to in a light most favorable to the verdict. *Id*. Second, the appellate court "may only find the evidence factually insufficient when necessary to 'prevent manifest injustice.'" *Id*. (quoting *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997)). Third, the appellate court must explain why the evidence is too weak to support the verdict or why the conflicting evidence greatly weighs against the verdict. *Id*. Although the verdict is afforded less deference during a factual-sufficiency review, an appellate court is not free to "override the verdict simply because it disagrees with it." *Id*.

In this case, the contrary evidence does not greatly outweigh the evidence that appellant intentionally and knowingly sexually assaulted A.F. The jury was free to believe

or disbelieve any portion of the witness' testimony, and we presume the jury resolved conflicts in favor of the prevailing party. *Wooten v. State*, 267 S.W.3d 289, 296 (Tex. App.–Houston [14th Dist.] 2008, pet. ref'd).

Viewing all the evidence neutrally, we conclude that the evidence supporting the conviction is not so weak that the fact finder's determination is clearly wrong and manifestly unjust, or that the verdict is against the great weight and preponderance of the evidence. *See Watson*, 204 S.W.3d at 417. We hold that the evidence is legally and factually sufficient to support the conviction for sexual assault of a child. *See Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978) (holding that when victim testified that defendant's sexual organ penetrated her sexual organ, her testimony, standing alone, is sufficient evidence of penetration). We overrule the sole issue for review.

### III. Conclusion

We affirm the trial court's judgment.

ROSE VELA
Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the 1st
day of April, 2010.

8